**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LEVINA WONG,<br><br>                  Plaintiff,<br><br>          v.<br><br>VESON NAUTICAL LLC and SEAN BRIDGEO,<br><br>                  Defendants. | Civil Action No. 24-CV-12752-IT |

**PLAINTIFF LEVINA WONG'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO COMPEL DISCOVERY**

Plaintiff Levina Wong ("Ms. Wong" or "Plaintiff") submits this Memorandum of Law in Support of her Motion to Compel Discovery pursuant to Fed. R. Civ. P. 37(a) (the "Motion"). Defendants Veson Nautical LLC ("Veson") and Sean Bridgeo ("Bridgeo") (collectively, "Defendants") have asserted sweeping and unjustified objections in their written responses to Ms. Wong's discovery requests that thwart Ms. Wong's right to obtain discoverable information necessary to pursue her claims. Ms. Wong has made repeated good faith efforts to find compromises to resolve the parties' differences without the Court's involvement, but Defendants maintain their objections. Accordingly, Ms. Wong seeks the Court's assistance in compelling Defendants to properly respond to her requests.

**FACTUAL BACKGROUND**

As alleged in the Amended Verified Complaint (Dkt. No. 4) ("Compl."), this case arises from Defendants' discriminatory and retaliatory actions against Ms. Wong during her tenure as Veson's General Counsel. Despite her contributions and dedication to Veson, Defendants

subjected Ms. Wong to an intolerable and unlawful work environment that culminated in her constructive discharge on June 20, 2024. *See id.,* ¶¶ 201-02.

### a. Bridgeo's Campaign of Gender-Based Harassment and Undermining Conduct

Ms. Wong, an attorney with over 22 years of professional experience, joined Veson Nautical LLC in March 2020 as its inaugural Vice President and General Counsel and was promoted to Senior Vice President in April 2023. Compl., ¶¶ 9-10. She built the legal department from one to five and was "well-regarded by her peers and direct reports." *Id.*, ¶¶ 14, 22. Despite that record, Defendant Sean Bridgeo—Veson's CFO and Ms. Wong's peer—made clear that he expected female attorneys to occupy subordinate positions to him. *Id.*, ¶¶ 25, 29.

Beginning in May 2023 (shortly after Ms. Wong's promotion), Bridgeo actively and persistently undermined Ms. Wong's authority. *Id.*, ¶ 31. For example, he retained outside employment counsel without consulting her, despite her clear authority over outside counsel selection. *Id.*, ¶¶ 39-47, 70-71. He excluded her from negotiating a key employment agreement following Veson's acquisition of a French software company; the agreement Bridgeo's chosen counsel produced was missing a crucial clause, an omission Ms. Wong characterized as malpractice. *Id.*, ¶¶ 60-63, 73-77. Bridgeo did not engage in this type of undermining behavior with any of the senior male employees at Veson, including male executives who had taken months of family leave. Compl., ¶ 54.

### b. The Rat "Prank" and Failure of Leadership

During a January 2024 office tour in London, Ms. Wong flagged the conspicuous presence of numerous rodenticide stations at one prospective site as a likely indicator of infestation. Compl., ¶¶ 83-84. Bridgeo joined others in teasing her by asking whether she was scared of rodents, implying that she was a stereotypical woman. Compl., ¶¶ 85-87. After Ms. Wong raised her

2

concerns directly with Veson's COO, Bridgeo sent her a Slack message directing her not to discuss the issue with "people"—which he confirmed meant the CEO and COO—reprimanding her for going over his head. Compl., ¶¶ 90-92.

On February 6, 2024, when the Boston office was unusually full, Ms. Wong arrived at her office to find a realistic stuffed rat hidden in the trash bin behind her desk. Compl., ¶¶ 99-103. Bridgeo, laughing, admitted he had placed it there. Compl., ¶ 104. He had also hidden a second rat inside her desk and surreptitiously placed a third at the bottom of Ms. Wong's personal work bag— all in front of a Senior Manager invited specifically to witness the harassment. Compl., ¶¶ 107, 115. Ms. Wong did not discover that third rat until days later. Compl., ¶ 116. Bridgeo also barged into Ms. Wong's office, without invitation, fished the rat from her trash, and paraded it around the office. Compl., ¶¶ 111-112.

The prank was designed to frighten and intimidate Ms. Wong by exploiting the trope of women fearing rats, to punish her for being a "rat" who had escalated concerns over his head, and to publicly humiliate her in front of peers and direct reports. Compl., ¶ 105. Veson's leadership response compounded the harm. CPO Kerry Unflat sent Ms. Wong a message—with Bridgeo copied—asking with a laughing emoji whether she wanted to "submit a ticket to maintenance/housekeeping." Compl., ¶ 106. When Ms. Wong told the COO about the rats, he asked whether she had "a sense of humor." Compl., ¶¶ 113-114. Bridgeo had pre-planned the "prank" with multiple senior leaders, at least two of whom "questioned his judgment" yet did nothing to stop him. Compl., ¶¶ 128-129. Veson never disciplined or took any other adverse action against Bridgeo, and none of his collaborators were disciplined, either. Compl., ¶ 140.

### c. *Veson Retaliates Against Ms. Wong*

After Ms. Wong complained of unlawful harassment on February 7, 2024, Veson retaliated against her. Compl., ¶¶ 130, 141. Ms. Wong asked Veson to relocate Bridgeo's office (then directly across from hers) and to install a lock on her door; instead, Veson expressed concern about the optics of moving Bridgeo, stalled until late March, never installed the lock, and forced Ms. Wong to temporarily isolate herself from her own team in the interim. Compl., ¶¶ 142-148. When Veson finally relocated Bridgeo, it moved Unflat's HR team along with him—to a key-card-protected space adjacent to the CEO and COO offices—while Ms. Wong's team was left without proximity to any C-suite executive, signaling to the entire workforce that Veson's own legal team had been exiled. Compl., ¶¶ 149-155.

The unlawful conduct caused situational PTSD-like symptoms and required Ms. Wong to take FMLA leave from April 8 to April 30, 2024. Compl., ¶¶ 167-169. Before returning, she requested a reasonable accommodation: that Veson engage a mediator to manage her relationship with Bridgeo, and identified a candidate. Compl., ¶¶ 171-172. Veson never followed up and never engaged one. Compl., ¶¶ 173-174. Veson utterly failed to engage in an interactive dialogue or identify an alternative accommodation, and instead exacerbated her PTSD-like symptoms by minimizing, ignoring, and affirmatively intensifying her concerns. Compl., ¶¶ 180-181.

Veson's HR also retaliated against Ms. Wong. In March 2024, Unflat chastised Ms. Wong for supposedly failing to keep HR involved in a corporate share-program matter—even though Ms. Wong had, in fact, copied HR Director Margaret Mo (Unflat's direct report) on the underlying communications. Compl., ¶¶ 157-163. To manufacture the appearance of an exclusion, Unflat deliberately deleted from the email chain the very message in which Ms. Wong had copied Mo before sending her chiding email. Compl., ¶ 163. HR continued to exclude Ms. Wong from

4

material legal matters, including the negotiation of a separation agreement for the French Company's former CFO. Compl., ¶¶ 164-166, 187, 195-198. The cumulative effects of Defendants' conduct created intolerable working conditions, forcing Ms. Wong's constructive discharge on July 3, 2024. Compl., ¶¶ 11, 200-203.

## DISCOVERY STATUS

Ms. Wong served her First Set of Requests for Production and her First Set of Interrogatories on Defendants Veson and Bridgeo on May 9, 2025 (Exs. A, B). Defendants served their written responses to Ms. Wong's first set of discovery requests on July 11, 2025 (Exs. C, D). On that same date, Defendants also produced an initial set of documents. Ms. Wong served her second set of document requests and interrogatories on Defendants on June 16, 2025 (Exs. E, F).[1] Defendants served their written responses to Ms. Wong's second set of discovery requests on July 25, 2025 (Exs. G, H).

Defendants' original written responses and objections were lacking in many respects. Consequently, Ms. Wong's counsel sent defense counsel a detailed letter on August 20, 2025 articulating the numerous deficiencies contained in Defendants' written responses and objections and attempting to narrow their differences (the "Deficiency Letter") (Ex. I). Ms. Wong's counsel requested a Local Rule 7.1 conference to further discuss the matter.

Throughout subsequent telephone conferences and exchanges of correspondence among counsel for the parties,[2] Ms. Wong has attempted in good faith to resolve the issues raised in the

---

[1] Ms. Wong's First and Second Sets of Requests for Production are referred to collectively as the "Requests" and her First and Second Sets of Interrogatories are referred to collectively as the "Interrogatories." References herein to the Requests or Interrogatories encompass both sets unless otherwise specified.

[2] The parties had their first telephone conference to discuss these issues on September 18, 2025, and Ms. Wong sent a follow up letter on October 1, 2025 proposing resolutions to the issues identified in the Deficiency Letter. Since then, the parties have exchanged multiple written communications concerning these issues and also have had calls in which these issues were discussed, including on October 23, 2025; January 15, 2026; February 13, 2026; March 5, 2026 (in advance of that day's discovery conference with the Court); and April 16, 2026.

Deficiency Letter. On October 29, 2025, Defendants produced their Privilege Log, revealing the existence of critical witness interview notes and an investigation report authored by a third-party investigator, Renee Jackson of Blue Oak Legal, between February and April 2024 (Ex. J). Thereafter, on November 21, 2025, Defendants served amended written responses. *See* (Exs. K, L) (Defendants have also made sporadic productions of additional documents since their initial production). However, while the parties succeeded in narrowing some of their areas of dispute, Defendants recently confirmed that they will not produce any documents or provide responses to multiple requests for production and interrogatories:

- Documents and communications from certain Veson custodians (Margaret Mo, Boey Yu, Ayla Ahmed, and Christiane Felts);

- Documents related to Veson's investigation of Ms. Wong's claims, specifically Renee Jackson's interview notes of February 14-16, 2024; and Renee Jackson's investigative report of April 8, 2024;

- Information concerning investigations into alleged wrongdoing, misconduct, or discrimination by any member of Veson's Senior Leadership Team from January 2020-December 2024;

- Veson's financial information;

- Documents related to the departure of Veson's former Chief People Officer, Kerry Unflat.

As explained fully below, each of these categories of information are directly relevant to the claims and defenses in this action, and without these documents, Ms. Wong cannot meaningfully evaluate her damages, prepare for depositions, or otherwise fully pursue her claims against Defendants. Because the parties are at an impasse, Ms. Wong has no choice but to bring this Motion.

## **ARGUMENT**

Fed. R. Civ. P. 37(a) provides that if a party fails to respond to discovery, the party seeking discovery may move for an order compelling production. *Id.* The party resisting discovery bears the burden of showing why it should not be granted. *See Driscoll v. McCann*, No. 19-cv-12302-ADB, 2020 WL 5983272, *1 (D. Mass. Oct. 8, 2020). Here, the Court should grant the Motion because Defendants continue to resist complying with their discovery obligations without a legitimate basis.

### I.    Defendants Should Be Ordered to Search for Responsive Documents from Additional Custodians.[3]

An overarching deficiency in Defendants' production is their failure to search the records of key custodians who were central to the events alleged in the Amended Verified Complaint. Fed. R. Civ. P. 26(b)(1) provides, in part, that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. *Id.* "As a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the action." *Cabi v. Boston Children's Hosp.*, No. 15-cv-12306-DJC, 2017 WL 8232179, at *1 (D. Mass. June 21, 2017) (internal citation omitted). Fed. R. Civ. P. 34(a) permits a party to seek documents "in the responding party's possession, custody, or control." *Id.* Here, Defendants improperly limited their search for responsive documents to the following custodians – Ms. Wong, Ms. Unflat, Bridgeo, and Mr. Riley – and to their Veson email accounts and Slack channels between and among these same

---

[3] It is also worth pointing out the irony of Defendants refusing to search for responsive documents from custodians within Veson itself, when it is simultaneously moving to compel Ms. Wong to produce communications between Ms. Wong and ***third parties*** discussing Bridgeo or the allegations underlying the Complaint. *See* Dkt. No, 30. Defendants' own argument for why Ms. Wong's communications with third parties should be produced (which should be rejected in that context), in fact apply with more force here: "[t]hese communications are within [Defendants'] possession, custody, or control, and there is no apparent undue burden or significant expense associated with producing them." Dkt. No. 30 at 5.

individuals. Consequently, responsive emails and Slack messages that did ***not*** include these four individuals were not even searched or reviewed; a glaring oversight that is prejudicial to Ms. Wong.

### Human Resources Department

Margaret Mo, Veson's Senior Director of International HR at all relevant times, was deeply involved in the acquisition of the French Company and the subsequent integration of employment agreements, where Ms. Wong was excluded. Compl., ¶¶ 67-78. Furthermore, internal communications suggest Ms. Mo was a significant point of contact for the HR matters that form the basis of Ms. Wong's retaliation claims. Limiting the HR search to only those emails and Slack messages in which Ms. Unflat was included is, therefore, insufficient to capture the full scope of Veson's relevant internal communications. Indeed, the current production, which identified over 100 relevant communications involving Ms. Mo only because they were captured in the accounts of the two currently searched custodians, confirms her role as a central participant in the specific HR integration and contractual disputes at the heart of this case. Defendants' refusal to include Ms. Mo as a custodian is particularly egregious as Defendants included her in their initial disclosures, stating that she "has discoverable information about the facts and circumstances surrounding the allegations set forth in the Complaint." Thus, discovery from Ms. Mo is proper and, at a minimum, Defendants should be ordered to search Ms. Mo's email account for additional responsive documents.

### Legal Department

Despite Ms. Wong's allegation that her entire Legal Team was negatively impacted by the retaliation against her, *see* Compl., ¶¶ 152-55 and 182, Defendants have improperly restricted their search for responsive documents within the Legal Team exclusively to Ms. Wong, completely

ignoring other key custodians within her department. This limitation is meritless given Ms. Wong's central allegation that Defendants' retaliatory conduct affected her entire team.

In particular, Boey Yu, a member of the Legal Team, is a necessary custodian. Communications to and from Ms. Yu independent of Ms. Wong are likely to contain unique, relevant evidence of the exile and exclusion from business decisions that Ms. Wong alleges contributed to her constructive discharge. Defendants asserted in their responses to Request Nos. 12 and 24 that documents concerning the physical relocation of the Legal team and communications between the Legal Team and other departments regarding certain employment obligations have been produced "as they are maintained in the ordinary course of business." *See* Ex. C at 6, 10. However, this representation is necessarily incomplete because they have failed to search records of other custodians within the Legal Team, such as Ms. Yu, who authored or received those very communications. Communications involving Ms. Yu are likely to contain, for example, unique, non-duplicative evidence regarding the lack of C-level exposure and the day-to-day effects of the hostile work environment and retaliation that cannot be obtained from Ms. Wong's account alone, and Defendants should therefore be ordered to search Ms. Yu's accounts and produce all responsive, non-privileged information.

**Board of Directors**

Defendants further failed to search the records of specific Board members they identified in their own responses to Ms. Wong's discovery requests. Defendants answered in Interrogatory No. 6 that the full Board was informed of the so-called "rat incident" in or around February 2024. *See* Ex. L at 2. In response to Interrogatory No. 7, which asked for the identification of Board members involved in investigating Ms. Wong's complaints about Bridgeo's treatment of her, *see* Ex. B at 6, Defendants identified Ayla Ahmed and Christiane Felts as the specific members who,

in consultation with the full Board, made the decision to retain a third-party investigator. *See* Ex. L at 2-3. Despite these responses, Defendants did not search these Board members' accounts for responsive documents, and have not produced any internal Board communications, meeting minutes, or notes regarding the investigation or the decision-making process.

This utter lack of production of communications with or among the Board is improper. Under Fed. R. Civ. P. 26(b)(1) and 34, the concept of "control" is broadly construed. "If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have 'control,' even if the documents are actually in the possession of a non-party." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006) (internal citation omitted); *see also New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259, 268 (N.D.N.Y. 2006) (adopting similar reasoning in analyzing whether a party had control over non-party's documents). Because Board members act as the controlling principals of the corporation, the records of Board members acting on Veson's behalf that concern the rat incident and subsequent investigation are inherently within Veson's control.

Furthermore, in response to Request Nos. 8-10, which seek all documents concerning the investigation, materials submitted to the Board, and deliberations regarding disciplinary actions toward Bridgeo, *see* Ex. A at 7, Defendants asserted broad privilege and work-product objections. *See* Ex. C at 4-5. For Request No. 9 specifically, Defendants stated that "there are no non-privileged documents in their possession, custody or control." *See* Ex. C at 4. It defies common sense that a Board-level decision to hire an outside investigator and review a highly unprofessional stunt by the CFO generated *zero* non-privileged records. By refusing to search for documents from the very individuals they identified as key players, Defendants are shielding the "[m]utual knowledge of all the relevant facts" that is "essential to proper litigation." *Hickman v. Taylor*, 329

10

U.S. 495, 507 (1947). Because relevance is broadly construed to include information with any possibility of relevance to the subject matter of the action, the Court should compel a search of the records of – at a minimum – Board members Ayla Ahmed and Christiane Felts to ensure the discovery process is not carried out in the dark. *See id.* at 501; *Cabi*, 2017 WL 8232179, at *1.

Defendants should, therefore, be ordered to search for and produce the requested information from additional custodians in the HR Department and Legal Department, including Margaret Mo, Boey Yu, Ayla Ahmed, and Christiane Felts.

## II. Defendants' Assertion of Attorney-Client Privilege and Work Product is Overly Broad and Should be Overruled.

In Request Nos. 8-10, 18, 49, and 50, and Interrogatory No. 20, Ms. Wong seeks factual information about the investigation into her complaint about Bridgeo, which was conducted by Renee Jackson (an attorney with Blue Oak Legal), including Ms. Jackson's witness interview notes. *See* Ex. A at 7, 9; Ex. B at 8-9; Ex. E at 6. In response to each of these Requests, Defendants asserted boilerplate objections, claiming the materials are protected by the attorney-client privilege and the work-product doctrine. *See* Ex. C at 4-5, 8-9; Ex. G at 1-2; Ex. L at 7. Subject to their objections, Defendants claim to have produced all nonprivileged, responsive documents – a scant 12 documents. *See* Ex. C at 4. Defendants have refused to produce any notes from Ms. Jackson's interviews, claiming in their answer to Interrogatory No. 20 that "Defendants have no non-privileged/non-work product oral or written statements or notes of such statements in their possession except the Position Statement Verification." Ex. L at 7. Plaintiff seeks to compel production of these documents as the contents of witness interview notes and the investigative report have been put at issue by Defendants, and they do not constitute opinion work product. Moreover, Plaintiff has met her burden to show that production of this fact work product should

be compelled because she has a substantial need for those contemporaneous records and will otherwise suffer undue hardship.

**A. Attorney-Client Privilege Does Not Shield Communications That Defendants Have Placed At Issue.**

In a discovery dispute, a party resisting discovery under the protections of a privilege bears the burden of establishing that it applies. *See United States ex rel. Wollman v. Mass. Gen. Hosp., Inc.*, 475 F. Supp. 3d 45, 60 (D. Mass. 2020) (citing *FDIC v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000)). A threshold issue is whether the interview notes and investigative report of Ms. Jackson, a third-party investigator, are even covered by the attorney-client privilege. Under federal law,[4] the attorney-client privilege protects "only those communications that are confidential and are made for the purpose of seeking or receiving legal advice." *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 24 (1st Cir. 2011) (quoting *In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003)).

Assuming for the sake of argument that a privilege attached to communications between Ms. Jackson and Elise Busny (Veson's outside counsel) – including the April 8, 2024 document described simply as a "Privileged Investigation Report from Investigator" – Defendants have waived such protection by relying upon these communications for its defense. Indeed, Defendants have repeatedly and affirmatively placed the thoroughness and the conclusions of Ms. Jackson's investigation at the center of their defense in this litigation.

For example, in their answer to Interrogatory No. 15, which addresses the workplace investigation into allegations against Bridgeo, Defendants state that the "third-party investigator concluded there was insufficient evidence to show that Mr. Bridgeo's actions were based on

---

[4] There is no material difference between federal and Massachusetts law concerning privilege. *See Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 23 (1st Cir. 2011).

Plaintiff's gender or race or that there had been any retaliation." Ex. D at 8. Further, in their answer to Interrogatory No. 11 that asks about any actions taken against Ms. Unflat and other employees in Veson's HR Department as a result of Ms. Wong's reports of their retaliatory behavior, Defendants responded that no action was taken towards Ms. Unflat because Ms. Jackson investigated but "found insufficient evidence of retaliation." *Id.* at 6. In their Answer, Defendants formally assert as their Tenth Affirmative Defense that "Defendants at all material times made good faith efforts to comply with its obligations under applicable laws." Dkt. No. 12 at 27. This defense is inherently predicated on the adequacy and thoroughness of the very investigative process that Defendants now seek to shield from discovery.

Because Defendants are using the investigation's favorable (to them) outcome as the evidentiary basis to prove they acted reasonably and in good faith and to support their position that no unlawful conduct occurred, Ms. Wong must be allowed to test the accuracy and integrity of those representations. *See, e.g., In re Keeper of Recs.*, 348 F.3d at 24 (explaining that an implied subject matter waiver may be found when an advice of counsel defense is raised because otherwise, "the client could selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truth-seeking process"). Defendants must not be allowed to use the attorney-client privilege as "both a sword and a shield" by relying on these communications to prove their defense while simultaneously withholding the underlying details from Ms. Wong. *See id.*

### B. The Witness Interview Notes Are Discoverable Fact Work Product Because Ms. Wong Has Demonstrated a Substantial Need for These Contemporaneous Records and an Undue Hardship Without Them.

The second issue is whether the work product doctrine protects Ms. Jackson's witness interview notes and investigation report, all of which are listed in the Privilege Log, *see* Ex. J, from

13

disclosure. The work product doctrine protects two categories of attorney work product: fact work product and opinion work product, which contains mental impressions, conclusions, opinions, or legal theories of an attorney. While opinion work product is given a near absolute protection from disclosure, "the production of fact work product may be compelled where a party demonstrates a substantial need for the information and an undue hardship should it not be produced." *United States v. Cadden*, No. CR 14-10363-RGS, 2015 WL 5737144, at *2 (D. Mass. Sept. 30, 2015) (internal quotation marks omitted) (citing *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1015 (1st Cir. 1988)). *See also* Fed. R. Civ. P. 26(b)(3)(A)(ii). A substantial need for discovery may exist, for example, where a party seeks "statements taken from parties or witnesses at the time of an incident." *City of Springfield v. Rexnord Corp.*, 196 F.R.D. 7, 10 (D. Mass. 2000). "Such statements are unique in that they provide a contemporaneous impression of the facts," and "[a] significant lapse of time may make it impossible to obtain the substantial equivalent of the material sought." *Id.*

If the documents in question here constitute work product at all, they are fact work product because they constitute or contain relevant, factual records of witness accounts from the investigation into Ms. Wong's complaint about Bridgeo. Factual information is not considered to be opinion work product unless the "focus, selection, or arrangement of the facts" reflects the attorney's thought process in a "meaningful way." *See Attorney Gen. v. Facebook, Inc.*, 487 Mass. 109, 128-29 (2021). Defendants' privilege log indicates that Ms. Jackson's interview notes are no more than standard notes summarizing the factual accounts of the participants. For example, the entries dated February 14-16, 2024 identifying Ms. Jackson's notes from interviews with Ms. Wong, Demetri Beldekas, Ms. Unflat, Bridgeo, and Mr. Riley, describe the documents merely as "notes from [Name's] investigation interview." *See* Ex. J at 2-3.

14

Production of the fact work product at issue here should be compelled because Ms. Wong has demonstrated both a substantial need for the discovery and undue hardship if not produced. Fed. R. Civ. P. 26(b)(3)(A)(ii). Ms. Jackson's notes are the only reliable records of witness statements made in February 2024, immediately following the "rat incident," and these witness accounts cannot be replicated by depositions taken years later. In addition, shielding Ms. Jackson's witness interview notes (and the factual portions of her investigative report) under these circumstances would allow Defendants to selectively present only the investigator's final conclusion while entombing unfavorable facts that may contradict it. *See In re Keeper of Recs.*, 348 F.3d at 24.

In the alternative, to determine if Ms. Jackon's witness interview notes and investigation report, in whole or in part, are discoverable, Ms. Wong requests the Court to conduct an *in camera* review to redact any genuine opinion work product and order the production of the remaining factual content within those notes and the report. *See U.S. ex rel. Cericola v. Ben Franklin Bank*, No. 99 C 6311, 2003 WL 22071484, at *3 (N.D. Ill. Sept. 4, 2003).

**III.    Defendants Should Be Ordered to Produce Documents Concerning Other Complaints About, and Investigations into, Members of Veson's Senior Leadership Team.**

In Request No. 18 and Interrogatory No. 15, Ms. Wong seeks information concerning investigations into alleged wrongdoing, misconduct, or discrimination by any member of Veson's Senior Leadership Team ("SLT") from January 2020 through December 2024. *See* Ex. A at 9; Ex. B at 7. In response to both requests, Defendants objected on the grounds that they are vague and overbroad. *See* Ex. C at 8; Ex. D at 8. Defendants further assert that the requests seek privileged attorney work product, confidential information regarding non-parties, and documents that are neither relevant nor proportional to the litigation. *See id.* Subject to these objections, Defendants

have refused to provide information concerning any investigation other than the one involving Ms. Wong's own complaint against Bridgeo. *See id*. (And for reasons discussed above, even that production is inadequate due to Defendants' overly broad assertions of attorney-client privilege and work product.)

As a threshold matter, Defendants' objections based on purported vagueness lack merit. Ms. Wong explicitly identified members of the SLT in Request No. 18. Ex. A at 9 ("All documents concerning any complaint and/or investigation into any alleged act of wrongdoing, misconduct, discrimination, harassment, and/or retaliation by any member of Veson's Senior Leadership Team (***i.e., Bridgeo, John Veson, Riley, Unflat, Eric Christofferson, Ben Thurecht, Jesse DiIanni, Russ Hubbard, and/or Ms. Wong***) from January 2020 through December 31, 2024…") (emphasis added). Ms. Wong has also clarified to Defendants' counsel that this specific group is the subject of Interrogatory No. 15. *See* Ex. I at 14. Responsive information clearly exists, as Ms. Wong is aware of at least four separate investigations into alleged acts of wrongdoing, misconduct, discrimination, harassment, and/or retaliation by members of the SLT during the requested period. *See id.*

Evidence regarding other complaints and investigations not directly involving Bridgeo is directly relevant to establishing a pattern or practice of discrimination or retaliation at Veson, and is therefore discoverable. Indeed, courts have recognized that this specific type of evidence is discoverable in discrimination cases such as this one. *See, e.g., Briddell v. Saint Gobain Abrasives Inc.,* 233 F.R.D. 57, 59-60 (D. Mass. 2005) (granting a motion to compel discovery into an employer's general practices because a plaintiff "should be permitted to show that defendants' past practices manifest a pattern of...discrimination") (internal citations omitted). The requested information is crucial to demonstrating how Veson responds to allegations of misconduct by its

16

male executives; namely, shielding them from facing the consequences of their wrongdoing, which is central to Ms. Wong's claims of a hostile work environment, discriminatory practices, and retaliation. *See also Brown v. Wal-Mart Assocs., Inc.*, 616 F. Supp. 3d 137, 146 (D. Mass. 2022) (granting a motion to compel and observing that in employment discrimination cases, "the discovery allowed is even more broad" because plaintiffs must often "build their cases from pieces of circumstantial evidence") (internal citations omitted).

Furthermore, discovery concerning complaints against SLT members provides important context regarding Veson's overall approach to internal investigations and the effectiveness of its policies.[5] Such information is highly relevant to Ms. Wong's contention that Veson failed to take adequate corrective action and instead condoned unlawful behavior by shielding male members of the SLT from the consequences of their wrongdoing. Ms. Wong also expects the requested information to reveal that while Veson typically retained third party investigators to handle investigations of accused misconduct by members of the SLT, Ms. Wong was treated disparately and unfavorably when she was directed by Bridgeo to personally investigate accusations of misconduct by Mr. Riley in 2023, even though Mr. Riley was Ms. Wong's direct manager.

Finally, Defendants' objections based on the disclosure of confidential information of third parties are misplaced. The Protective Order governing this action (Dkt. No. 21) specifically allows for the designation of "Confidential Discovery Material," which expressly includes "non-public personal information" and "records relating to confidential internal investigations." *Id.* at 2-3.

---

[5] Such information is also relevant to countering Defendants' Tenth Affirmative Defense that "Defendants at all material times made good faith efforts to comply with its obligations under applicable laws." *See Briddell,* 233 F.R.D. at 59.

17

Defendants should, therefore, be ordered to produce information responsive to Request No. 18 and Interrogatory No. 15 concerning **all** members of the SLT during the requested time frame, not just Ms. Wong's complaint about Bridgeo.

### IV.    Defendants Should Be Ordered to Produce Documents Concerning Veson's Finances.

In Request Nos. 20-22, Ms. Wong seeks documents "sufficient to show" Veson's budgets, financial statements, and financial projections. *See* Ex. A at 9. In response, Defendants set forth standard boilerplate objections. *See* Ex. C at 9-10. Defendants further object on the grounds that these Requests are premature, stating they will only "supplement this response following the liability-phase of the case, if necessary." Ex. C at 9-10.

Defendants' refusal to produce financial documents unless and until liability is established is procedurally and legally improper. First, Defendants do not have the ability or the right to unilaterally bifurcate these proceedings into two phases. Ms. Wong has certainly not agreed to bifurcation, and Defendants cannot unilaterally impose such a limitation on discovery. *See, e.g., Mellor v. JetBlue Airways Corp.*, No. 1:21-CV-10319-IT, 2023 WL 8653730, at *2 (D. Mass. Dec. 14, 2023) (bifurcation is a decision for the court, not the parties). Second, the requested financial information is obviously relevant and necessary to evaluate Ms. Wong's damages, including punitive damages, and to valuing the equity she would have been entitled to had she not been constructively discharged. *See, e.g., Brown,* 616 F. Supp. 3d at 146 (granting a motion to compel discovery because the scope of discovery is construed broadly); *Viscito v. Nat'l Planning Corp.*, 2019 WL 5318228, at *2 (D. Mass. Oct. 21, 2019) (observing when deciding on a motion to compel that the parties did not dispute that the requested information was generally relevant for discovery purposes because it pertained to plaintiff's calculation of alleged damages). Moreover, this information will be helpful to facilitate informed and meaningful settlement discussions.

18

The Defendants' remaining objections to Request Nos. 20-22 are likewise unwarranted. Regarding their objection on the grounds of undue burden, each of these Requests is narrowly tailored to seek only information "sufficient to show" the relevant financial data, minimizing any alleged burden. Ex. A at 9. Finally, objections regarding the confidentiality of non-public financial information are adequately addressed by the existing Protective Order. *See* Dkt. No. 21 at 3.

For all of these reasons, Defendants should be ordered to produce documents responsive to Request Nos. 20-22 without further delay.

## V.     Defendants Should Be Ordered to Produce Documents Concerning Kerry Unflat's Departure.

In Request No. 30, Ms. Wong seeks all documents concerning the departure of Ms. Unflat, Veson's former CPO. *See* Ex. A at 10. Defendants have objected to this request as, *inter alia*, overly broad, unduly burdensome, and seeking confidential information regarding a non-party who is not part of the instant lawsuit. *See* Ex. C at 12.

The circumstances surrounding the departure of Ms. Unflat are, indeed, relevant to Ms. Wong's claims. *See, e.g., Brown,* 616 F. Supp. 3d at 146 (the allowed scope of discovery is broad in employment discrimination cases).  Ms. Unflat was a central figure in the events alleged in this action, specifically regarding Veson's investigation of Ms. Wong's internal complaints and the subsequent retaliatory conduct (indeed, Ms. Unflat is identified in Defendants' initial disclosures along with Ms. Mo). Ms. Wong understands that Ms. Unflat's departure stemmed from a complaint regarding Ms. Unflat's own misconduct. Discovery into this matter, therefore, is not only relevant in that it casts doubt on Ms. Unflat's judgment concerning the very employment relations matters she was in charge of at Veson, but it also helps to establish Veson's institutional practice for handling investigations involving members of the SLT.

19

Furthermore, Ms. Wong believes that these documents will support that Veson responded to complaints against a female executive, like Ms. Unflat, differently than it did when such complaints were directed at male executives, like Bridgeo. For example, while Ms. Unflat was terminated following the report against her, Bridgeo was permitted to remain in his C-suite role. Such a stark contrast in disciplinary outcomes for Veson's male and female executives is highly probative of a discriminatory double standard. *See, e.g., Briddell,* 233 F.R.D. at 60 (a discovery timeframe limited only to the "contested employment action would foreclose plaintiff from elucidating past practices or identifying a pattern") (internal citation omitted); *Brown* 616 F. Supp. 3d at 146 ("'[i]n employment discrimination cases, the discovery allowed is even more broad, '[b]ecause employers rarely leave a paper trail-or 'smoking gun'—attesting to a discriminatory intent, [therefore] disparate treatment plaintiffs often must build their cases from pieces of circumstantial evidence.'" (quoting *Vazquez-Fernandez v. Cambridge Coll., Inc.*, 269 F.R.D. 150, 155 (D.P.R. 2010)). Moreover, Veson's handling of other internal investigations is relevant in that it highlights the disparate treatment of senior executives based on gender.

Finally, Defendants' confidentiality concerns are addressed by the existing Protective Order. *See* Dkt. No. 21 at 2–3. Accordingly, Defendants should be ordered to produce documents responsive to Request No. 30.

## CONCLUSION

For all of the foregoing reasons, the Court should allow Plaintiff's Motion to Compel Discovery, overrule Defendants' objections to the discovery requests at issue herein, order Defendants to search for and produce documents responsive to the Requests as described herein, and order Defendants to produce full and complete answers responsive to the Interrogatories as described herein, within ten (10) days of the Court's order on this Motion.

Respectfully submitted,

Levina Wong,

By her attorneys,


/s/ *Nicole Corvini*

Nicole Corvini, BBO No. 670587
*ndaly@beckreed.com*
Heather Carlson Krauss, BBO No. 644457
*hkrauss@beckreed.com*
Sarah Tishler, BBO No. 714062
*tishler@beckreed.com*
BECK REED RIDEN LLP
155 Federal Street, Suite 1302
Boston, Massachusetts 02110
Phone: (617) 500-8660
Fax: (617) 500-8665

Dated: May 6, 2026

21