# EXHIBIT I



Beck Reed Riden LLP
155 Federal Street | Suite 1302
Boston | Massachusetts 02110
Tel. (617) 500-8660 | Fax (617) 500-8665
BeckReedRiden.com

Heather Carlson Krauss
hkrauss@beckreed.com

August 20, 2025

***BY EMAIL***

Jamie Kessler, Esq.
Eve Keller, Esq.
Jackson Lewis P.C.
75 Park Plaza, 4th Floor
Boston, MA 02116
Jamie.kessler@jacksonlewis.com
Eve.keller@jacksonlewis.com

      Re:    <u>Levina Wong v. Veson Nautical LLC and Sean Bridgeo</u>
              Civil Action No. 24-CV-12752-IT

Dear Jamie and Eve:

I am writing to address detail the numerous deficiencies in Defendants' written responses and documents produced in response to Plaintiff Levina Wong's First Set of Interrogatories (and First Set of Requests for Production of Documents, which were served on May 9, 2025, as well as Plaintiff Levina Wong's Second Set of Interrogatories and Second Set of Requests for Production of Documents, which were served on June 16, 2025. Please note that this letter is based on our preliminary review of Defendants' written responses and document production, and Ms. Wong reserves the right to identify and raise further issues and/or deficiencies as this litigation progresses.

Please provide a few times next week when you are available for a meet and confer call to address the items below.

### Defendants' Deficient Interrogatory Answers

**Interrogatory No. 2** – Interrogatory No. 2 asks Defendants to identify each and every individual on the Real Estate Committee tasked with searching for and selecting Veson's new London office location. Defendants objected on the grounds that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case per Fed. R. Civ. P. 26(b)(1).

This information is relevant to understanding the context of Ms. Wong's concerns about the London office, which directly led to Bridgeo's malicious "rat prank" at the core of her claims. The individuals on the Real Estate Committee are likely to have knowledge regarding the decision-making process for the selection of the London office, including any discussions about



Jamie Kessler, Esq.
Eve Keller, Esq.
August 20, 2025
Page 2

potential issues with the sites. Some of those individuals may also have been in attendance at the dinner where Bridgeo announced and discussed his plan to carry out the rat prank. Please supplement Defendants' answer.

**Interrogatory No. 3** – Interrogatory No. 3 asks Defendants to identify each and every individual who participated in visits of potential sites for Veson's new London office location in early 2024. Defendants objected on the grounds that it is vague and not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case per Fed. R. Civ. P. 26(b)(1).

Similar to Interrogatory No. 2, the information sought in Interrogatory No. 3 is directly relevant to the events leading up to the rat prank. Identifying all participants in the site visits is crucial for understanding who else witnessed rodent traps, Ms. Wong stating her concerns, and subsequent interactions. Please supplement Defendants' answer.

**Interrogatory No. 6** – Interrogatory No. 6 asks Defendants to identify each and every member of Veson's Board of Directors (the "Board") who was informed about the rat incident directed at Ms. Wong by Bridgeo (including the date when each member was first informed). Defendants objected on the grounds that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case per Fed. R. Civ. P. 26(b)(1).

Defendants' response states that "in or around February 2024, Veson's Board was informed that Mr. Bridgeo placed three fake rats in Plaintiff's office." This limited response is insufficient. We are entitled to know which specific members of the Board were informed and when they were first informed, as this relates to Veson's knowledge of, and subsequent actions (or inaction), regarding the rat prank and Ms. Wong's allegations of harassment and a hostile work environment, which is central to her federal and state sex discrimination claims. Please supplement Defendants' answer with the identities of the Board members and the specific date(s) of their notification.

**Interrogatory No. 7** – Interrogatory No. 7 asks Defendants to identify each and every member of the Board who was involved with investigating Ms. Wong's complaints about Bridgeo's treatment of her as alleged in Paragraphs 24, 96, 118, 121, and 130-131 of the Amended Verified Complaint. Defendants objected on the grounds that it is overbroad, not reasonably calculated to lead to the discovery of admissible evidence, not proportional to the needs of the case, and that "involved with investigating" is vague and ambiguous.



Jamie Kessler, Esq.
Eve Keller, Esq.
August 20, 2025
Page 3

Subject to these objections, Defendants state that "none of the members of the Board of Directors investigated Plaintiff's complaints about Mr. Bridgeo directly" and that "Board members Ayla Ahmed and Christiane Felts, in consult with the entire Board of Directors made the decision to retain a third-party investigator to investigate Plaintiff's complaints, and the entire Board was aware of the investigation into her complaints, and the outcome of such investigation." This response is still deficient. The identities of all Board members who were involved in any capacity in the decision to investigate, oversight of the investigation, and review of its outcome are all critical to demonstrating Veson's knowledge of and responsibility for the alleged discrimination and retaliation. Please provide a more specific answer.

**Interrogatory No. 9** – Interrogatory No. 9 similarly asks Defendants to identify each and every individual involved in discussions concerning what actions, if any, to take towards Bridgeo (and any other Veson employees who were complicit in his misconduct) as a result of Ms. Wong's complaints about Bridgeo's treatment of her as alleged in Paragraphs 24, 96, 118, 121, and 130-131 of the Amended Verified Complaint. Defendants objected to the extent it assumes facts not established, calls for attorney-client privileged information, and that "involved in discussions" is vague and ambiguous. Subject to these objections, Defendants responded: "Ms. Unflat and Mr. Riley, with the assistance of counsel."

Defendants' answer appears to be overly narrow. The Amended Verified Complaint alleges that Bridgeo discussed his "rat prank" plan in advance with other members of Veson's senior leadership team, including Riley, Unflat, the Controller, the Vice President of Finance, and the Senior Vice President of Professional Services, and that at least two individuals questioned his judgment but did nothing to dissuade him. Furthermore, Ms. Wong's claims include allegations that Veson failed to discipline Bridgeo and that other complicit employees were not disciplined. Therefore, we seek the identity of all individuals involved in discussions about disciplinary actions or lack thereof, regardless of whether Defendants characterize their conduct as "misconduct" or "complicit." Please supplement Defendants' answer.

**Interrogatory No. 10** – Interrogatory No. 10 seeks the identity of each and every individual involved in discussions concerning Ms. Wong's requests for accommodations or assistance including, but not limited to, her requests that Bridgeo's office be relocated away from hers, for a lock on her office door, to not participate in meetings with Bridgeo until after he had participated in training or coaching, to not interact with Bridgeo on a one-on-one basis, for leaves of absence, for Veson to retain a third party mediator, to avoid interactions with Bridgeo unless they were in a group setting, and for prior notice when Bridgeo would be attending a meeting with her as alleged in Paragraphs 142-144, 156, 169, 171, 175, and 179 of the Amended Verified Complaint. Defendants objected to the extent it calls for attorney-client privileged information and the use of



Jamie Kessler, Esq.
Eve Keller, Esq.
August 20, 2025
Page 4

"accommodations" save for "leaves of absence." Subject to these objections, Defendants responded: "Ms. Unflat, Jesse Dilanni, Mr. Riley, and Ms. Mosher."

Defendants' objection regarding the term "accommodations" is improper. Ms. Wong's requests were, in fact, requests for reasonable accommodations for her situational PTSD-like symptoms, which are central to her disability discrimination claims. Defendants' limited response as to only requests for leaves of absence does not fully identify all individuals involved in discussions related to all of Ms. Wong's requests listed in Interrogatory No. 10. Other senior leadership members or relevant personnel may have been involved in such discussions. Please supplement Defendants' answer to include all individuals involved in these discussions.

**Interrogatory No. 11** – Interrogatory No. 11 asks Defendants to identify each and every individual involved in discussions concerning what actions, if any, to take towards Kerry Unflat and other employees in Veson's Human Resources Department as a result of Ms. Wong's reports of their resistant, exclusionary, and retaliatory behavior as alleged in the Amended Verified Complaint. Defendants objected to the extent it calls for attorney-client privileged information and because "Plaintiff never reported 'resistant, exclusionary, and retaliatory behavior' by 'other employees' in the Human Resources department during her employment." Subject to these objections, Defendants responded that "no one discussed taking action towards Ms. Unflat because the third-party investigator investigated Plaintiff's allegations of retaliation related to the office relocation and electing not to negotiate an employment agreement for Ms. Wong and found insufficient evidence of retaliation" and that "no one discussed taking action towards any other members of Veson's Human Resources department as Plaintiff did not report such allegations during her employment."

Defendants' response is factually contested by the Amended Verified Complaint. Ms. Wong clearly alleges that Unflat and her HR team continued to exclude Ms. Wong and her team from legal oversight of employment matters, and that Ms. Wong flagged a significant problem with a separation agreement that the HR team had not provided for review. Furthermore, Ms. Wong complained to Riley about Unflat's resistance regarding the RACI exercise and the continued exclusionary behavior. Therefore, the premise of Defendants' objection is false, and the answer is incomplete. Please supplement Defendants' answer to include all individuals involved in discussions concerning actions taken, or not taken, towards Unflat and other HR employees regarding their alleged retaliatory behavior as described in the Amended Verified Complaint.

**Interrogatory No. 12** – Interrogatory No. 12 asks Defendants to identify each and every individual involved in any discussions concerning Veson's decision whether or not to physically relocate its Legal team, Bridgeo's team, and/or Unflat's team in 2024, including any requests or



Jamie Kessler, Esq.
Eve Keller, Esq.
August 20, 2025
Page 5

relocations after Ms. Wong's resignation. Defendants objected on the grounds that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case per Fed. R. Civ. P. 26(b)(1). Subject to these objections, Defendants responded that "Ms. Unflat, Jesse Dilanni, and Mr. Riley were involved in discussions related to office relocations in February-March 2024 based on Plaintiff's request. Following Plaintiff's resignation, Marcy Wilkins and Boey Yu, members of the Legal Team, asked Mr. Riley to move their offices near the Human Resources and Finance teams, which Mr. Riley allowed."

Veson's decision to relocate various teams – rather than just Bridgeo's office – is a key aspect of Ms. Wong's retaliation claim, as it resulted in her physical isolation from senior executives and diminished the legal team's visibility and morale. Defendants were more interested in avoiding any stigma to Bridgeo that might be associated with an office move than in protecting her from his "pranks" and other harassment. Defendants' objection regarding proportionality is unpersuasive given the direct relevance to the retaliation claim. While Defendants have identified some individuals, Ms. Wong is entitled to understand the full scope of discussions and decision-makers regarding the office moves. Please supplement Defendants' answer to identify all individuals involved in these discussions, including any other senior leadership members, and provide more detail about the nature of their involvement.

**Interrogatory No. 14** – Interrogatory No. 14 asks Defendants to identify each and every individual involved in discussions concerning the payment and/or nonpayment of any compensation, equity, and/or bonuses to Ms. Wong for each year from 2020 through 2024. Defendants objected on the grounds that it is overbroad, unduly burdensome, not limited in scope, not reasonably calculated to lead to the discovery of admissible evidence, not proportional to the needs of the case per Fed. R. Civ. P. 26(b)(1), that "involved in discussions" is vague and ambiguous, and that it implies non-payment of entitled compensation. Defendants also referred to Fed. R. Civ. P. 33(d) and stated they would produce documents.

Defendants' objections are baseless. Interrogatory No. 14 is relevant to Ms. Wong's claims of sex discrimination as the rejected raise she requested upon her promotion to Senior Vice President or other forms of compensation that the Company decided not to award Ms. Wong may be relevant to, among other things, establish that Veson's articulated reasons for its actions toward her were pretexts for an unlawful motive and part of an overall pattern of discrimination. Moreover, while Defendants invoke Fed. R. Civ. P. 33(d), simply stating that documents will be produced is not a complete answer to an interrogatory asking for the identity of individuals involved in discussions. Please supplement Defendants' answer by naming the individuals involved in these discussions.



Jamie Kessler, Esq.
Eve Keller, Esq.
August 20, 2025
Page 6

**Interrogatory No. 15** – Interrogatory No. 15 asks Defendants to identify each and every workplace investigation involving allegations of wrongdoing, misconduct, discrimination, harassment, and/or retaliation by any member of Veson's senior leadership team from January 2020 through December 31, 2024, including, but not limited to, the identity of each individual charged with undertaking the investigation, a summary of the allegations, and the outcome of the investigation. Defendants objected on the grounds that it is vague, overbroad, not reasonably calculated to lead to the discovery of admissible evidence, not proportional to the needs of the case per Fed. R. Civ. P. 26(b)(1), seeks confidential information pertaining to non-parties, and seeks information protected by attorney-client privilege or work product. Subject to these objections, Defendants provided information only about the February 2024 investigation into Ms. Wong's complaint, and they objected to producing information about any other investigations not concerning Ms. Wong's allegations against Bridgeo, stating there have been no other such allegations or investigations against Bridgeo.

Defendants' blanket objections and refusal to provide information about other investigations into members of Veson's senior leadership team are unwarranted. Information regarding other investigations involving alleged misconduct by Veson's senior leadership team – even if not directly involving Bridgeo – is relevant to establishing a pattern or practice of discrimination or retaliation at Veson, and to demonstrating Veson's response to such allegations. This is crucial to Ms. Wong's claims of a hostile work environment and discriminatory practices. Information concerning similar complaints against other members of senior leadership is relevant to providing context for Veson's overall approach to handling such matters and the effectiveness of its policies, which is further relevant to our claims that Veson failed to take adequate corrective actions and condoned unlawful behavior, particularly by shielding members of the senior leadership team from negative consequences for their wrongdoing. Indeed, Ms. Wong is aware of at least *four* separate investigations into members of the senior leadership team that occurred during the requested time frame, so responsive information beyond the investigation about Bridgeo clearly exists. Such information is also relevant to show that whereas third party investigators were typically retained to handle investigations of the senior leadership team, Ms. Wong was treated differently and unfavorably when directed to handle an investigation into alleged misconduct by Sean Riley herself, even though he was her direct manager. To the extent Defendants have concerns about the disclosure of confidential information regarding third parties to this litigation, the Protective Order [Dkt. No. 21, at 2, 3] specifically allows for the designation of "Confidential Discovery Material," which includes "non-public personal information" and "records relating to confidential internal investigations," which addresses those concerns. Please supplement Defendants' answer.

**Interrogatory No. 16** – Interrogatory No. 16 seeks the identity of each and every member of Veson's Board of Directors with whom Bridgeo discussed the May 2023 workplace investigation



Jamie Kessler, Esq.
Eve Keller, Esq.
August 20, 2025
Page 7

as described in Paragraphs 35-38 as well as the identity of the individual who made the decision to not hire a third-party investigator. Defendants objected on the grounds that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case per Fed. R. Civ. P. 26(b)(1).

The information sought is relevant to Ms. Wong's claims regarding Bridgeo's undermining of her authority and role as Veson's General Counsel. The decision to handle the investigation internally contrary to Ms. Wong's advice to retain a third-party investigator is directly related to Bridgeo's alleged discriminatory conduct and his efforts to sideline Ms. Wong and place her in the awkward and unenviable position of investigating her own direct manager. Therefore, the identities of Board members involved in this discussion and the decision-maker are highly relevant. Please supplement Defendants' answer to address the substance of Interrogatory No. 16.

**Interrogatory No. 17** – Interrogatory No. 17 asks Defendants to describe each and every prank that Bridgeo has played on a colleague within the last ten (10) years to support Defendants' assertion in their Position Statement dated October 4, 2024 that "Mr. Bridgeo has a history of playing pranks on colleagues," including, but not limited to, the prank involving Mr. Beldekas that is identified in footnote 3 of that Position Statement. It also asks for the identity of the colleague(s) who was pranked, Bridgeo's employer at the time of the prank, Veson's position on whether any prank played on a Veson employee violated company policies, and any action taken by Veson in response. Defendants objected on the grounds that it is overbroad, not limited in time or scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case per Fed. R. Civ. P. 26(b)(1). Subject to these objections, Defendants described two pranks at Veson: the one involving Mr. Beldekas that is described in the Position Statement, and another long-standing joke with Greg Wilkins.

While Defendants have provided some information, their objection about scope is unavailing. Defendants asserted in the Position Statement that "Mr. Bridgeo has a history of playing pranks on colleagues," thus placing this issue in controversy. Ms. Wong is entitled to full discovery on Defendant's own assertion to determine if the rat prank fits into a "history" of similar behavior, or if it was uniquely targeted and malicious towards Ms. Wong. Defendants' response is incomplete as it does not address pranks from the last ten years or outside of Veson, nor does it state Veson's position on policy violations or any disciplinary actions for these pranks. Please supplement Defendants' answer to fully address all parts of Interrogatory No. 17.

**Interrogatory No. 18** – This interrogatory asks Defendants to identify each and every person, including, but not limited to, members of Veson's Board of Directors, who was involved with Veson's decision to hire Bridgeo including, but not limited to, persons responsible for checking



Bridgeo's references or conducting other background checks. Defendants objected on the grounds that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case per Fed. R. Civ. P. 26(b)(1).

The information sought is relevant to Veson's knowledge and due diligence regarding Bridgeo's past conduct and any potential propensity for the behavior alleged in the Amended Verified Complaint. It also speaks to Veson's institutional awareness and responsibilities in hiring senior leadership. Please supplement Defendants' answer to identify all persons involved in Bridgeo's hiring process.

**Interrogatory No. 19** – Interrogatory No. 19 asks Defendants to identify each and every person, including, but not limited to, members of Veson's Board of Directors, who was involved with Veson's decision to hire Unflat including, but not limited to, persons responsible for checking Unflat's references or conducting other background checks. Defendants objected on the grounds that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case per Fed. R. Civ. P. 26(b)(1). Subject to these objections, Defendants responded: "Mr. Riley in consult with external recruiters."

The information is relevant because the Amended Verified Complaint alleges that Unflat had previously worked under Bridgeo's direct supervisory authority at another employer and that Bridgeo introduced Unflat to Veson as a candidate. This past personal connection and any introduction or endorsement of Unflat by Bridgeo is not only pertinent to Ms. Wong's allegations that Unflat later allied with Bridgeo and sought to exclude and undermine Ms. Wong, but it also provides context as to why Unflat would have been willing to do so and to also minimize Ms. Wong's internal complaint about the rat prank and other discriminatory conduct. Therefore, the identity of all persons involved in Unflat's hiring, including any Board members or other executives, is undeniably relevant. Please supplement Defendants' answer to fully address Interrogatory No. 19.

**Interrogatory No. 20** – Interrogatory No. 20 asks Defendants to identify any and all oral or written statements, as well as any and all video recordings, audio recordings, transcripts, transcriptions, or notes of such statements, that Veson has in its possession, custody, and/or control concerning any of the claims, defenses, allegations, or subject matter contained in any of the pleadings filed in this Action, including specific details for each statement. Defendants objected on the grounds that it is vague, overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not proportional to the needs of the case per Fed. R. Civ. P. 26(b)(1), seeks confidential information pertaining to non-parties, and seeks information protected by attorney-client privilege or work product. Subject to these



Jamie Kessler, Esq.
Eve Keller, Esq.
August 20, 2025
Page 9

objections, Defendants stated: "none except the Position Statement Verification, attached to Defendant's response to Plaintiff's First Set of Production."

Defendants' blanket objections are insufficient, and the answer appear to be incorrect. Interrogatory No. 20 seeks fundamental information about statements related to the claims and defenses in this action. The existence and content of such statements are highly relevant. Defendants' response that there are "none" except for the Position Statement Verification is implausible given the scope of the Amended Verified Complaint and the numerous interactions and investigations described therein. For example, Ms. Wong herself had multiple conversations with Riley, Unflat, and Mr. Veson regarding Bridgeo's conduct and her complaints. These conversations would likely have been documented (or at least remembered). Furthermore, Veson hired a third party to investigate Ms. Wong's internal complaint about Bridgeo, and it strains credulity to maintain that there are no written statements or reports resulting from that investigation. Finally, the Protective Order [Dkt. No. 21, at 2, 3] explicitly allows for the designation of "Confidential Discovery Material" to protect sensitive information, including "personally identifying information" and addresses concerns about non-parties by allowing disclosure to specific authorized persons. Please supplement Defendants' answer to accurately reflect all responsive statements, including oral statements and any notes or summaries thereof, and to fully address all subparts of Interrogatory No. 20.

**Interrogatory No. 25** – Interrogatory No. 25 asks Defendants to identify all personal assets held by Bridgeo from January 1, 2023 through the present, whether held individually or jointly with his wife and identifies specific examples of such assets. Defendants objected on the basis that Request No. 25 is overly broad, unduly burdensome, premature, irrelevant, and disproportionate to the needs of this case. Subject to those objections, Defendants answered that they "will supplement this response following the liability-phase of the case, if necessary."

Defendants' objections to Interrogatory No. 25 are lacking in merit. The information sought in Interrogatory No. 25 is directly relevant to Ms. Wong's potential damages and Bridgeo's ability to pay if he is found to be personally liable. Delaying a full answer until after a "liability-phase" is inappropriate, as such information would be important for both settlement discussions and to have a record of Bridgeo's personal assets in the event he later attempts to move any so as to render himself judgment proof. Moreover, a bifurcation of discovery on damages or of the trial has not been agreed upon at this point. In addition, Defendants' objection that Request No. 25 is unduly burdensome is unwarranted because Ms. Wong seeks only documents "sufficient to show" the requested information. Please produce a full and complete answer to Interrogatory No. 25 promptly.



**Defendants' Deficient Document Production**

As an overarching concern regarding all of Defendant's responses is the relative lack of text messages and Slack messages. It is difficult to believe that there are not more such messages containing responsive information. Please confirm that Defendants have conducted a reasonable search of all relevant custodians' phones (both Veson-issued and personal) and Slack messages for responsive information. We consider Bridgeo, Riley, Unflat, Veson, other members of the senior leadership team, and members of Veson's Board of Directors to be such custodians, but we ask that you confirm the names of the individuals whose devices and accounts have been searched.

**Request No. 3:** Request No. 3 seeks all documents concerning Ms. Wong's request for a raise, and Veson's response, in or around April 2023 when Veson promoted her to a Senior Vice President position. Defendants objected on the grounds that it is overly broad and seeks irrelevant information. Subject to this objection, Defendants stated that, after a reasonable search, no documents responsive to this request were located, but that they would supplement if non-privileged documents are located.

Information sought in Request No. 3 is highly relevant to Ms. Wong's compensation and Defendants' alleged discriminatory practices, as she claims Veson rejected her request for a raise commensurate with her new title and duties, placing her compensation out of line with comparable General Counsels. At minimum, we would have expected the production of a so-called "compensation letter," documenting the communication of the title change and a calculation of expected annual cash compensation. Please confirm whether a further search has occurred and if any responsive documents have been located. If not, please confirm that no such responsive documents exist in Defendants' possession, custody, or control.

**Request No. 4:** All documents and communications concerning the presence (or lack thereof) of rodents or pests at any of the sites considered for Veson's new London office. Defendants objected on the grounds that it is vague, ambiguous, and overly broad. Subject to this objection, Defendants stated that they are "unaware of any responsive documents responsive to this request except for Plaintiff's communications related to her concerns about the mousetraps," which have been produced.

The presence of rodents at the London office site is a central factual allegation leading to the "rat prank" and is directly relevant to establishing the basis for Ms. Wong's concerns. Defendants' assertion of being "unaware" of any other responsive documents except Ms. Wong's own communications is difficult to reconcile with the circumstances. It is highly likely that there would be internal communications about Ms. Wong's concerns, reports from realtors, or other



Jamie Kessler, Esq.
Eve Keller, Esq.
August 20, 2025
Page 11

documentation beyond Ms. Wong's concerns. Please conduct a more thorough search for responsive documents.

**Request No. 6:** All stuffed rats acquired by Bridgeo to carry out the rat incident as described and alleged in the Amended Verified Complaint. Defendants objected on the grounds that it is overly broad, unduly burdensome, and irrelevant. Subject to this objection, Defendants stated that they "no longer have the stuffed rats in their possession."

While physical rats may no longer be in Defendants' possession, the objection regarding irrelevance is unfounded. The stuffed rats are physical evidence of the intentional infliction of emotional distress, discrimination, and harassment alleged by Ms. Wong. Their existence and appearance are crucial for demonstrating their very realistic appearance and the severity and pervasive nature of the hostile work environment. In addition, Defendants' response is insufficient in that it only states they are no longer in possession without further explanation of their disposal or when they ceased to be in their possession. Please provide a more complete explanation pursuant to Instruction No. 6 set forth in Plaintiff's First Set of Requests for Production to Defendants Veson Nautical, LLC and Sean Bridgeo.

**Request No. 9:** All documents submitted to Veson's Board of Directors concerning the rat incident including, but not limited to, any initial reports and/or summaries of investigations and their outcomes. Defendants objected on the grounds that it seeks disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney or representative, or documents protected by attorney-client privilege and work product. Subject to these objections, Defendants stated there are "no non-privileged documents in their possession, custody or control."

Response No. 9 appears to assert a blanket privilege over all communications with the Board regarding the rat incident. While certain legal advice may be privileged, factual summaries or reports of investigations presented to the Board are unlikely to be entirely protected. The Board's knowledge and involvement are critical to proving Veson's liability for the alleged harassment and its failure to take appropriate corrective action. Factual information is generally discoverable, even if contained within a privileged document. Moreover, it is likely that there were emails, text messages, or Slack messages to the Board alerting its members about the rat prank and Ms. Wong's complaint. Please provide responsive documents with any privileged information redacted, as well as a privilege log for any documents redacted and/or withheld, detailing the basis for the privilege claim for each specific document.

**Request No. 11:** All documents concerning Ms. Wong's requests for accommodations or assistance during her employment with Veson including, but not limited to, her requests that


**Beck Reed Riden** LLP

Jamie Kessler, Esq.
Eve Keller, Esq.
August 20, 2025
Page 12

Bridgeo's office be relocated away from hers, for a lock on her office door, to not participate in meetings with Bridgeo until after he had participated in training or coaching, to not interact with Bridgeo in a one-on-one basis, for leaves of absence, for Veson to retain a third party mediator (including calendar entries or proposals from any potential third party mediator), to avoid interactions with Bridgeo unless they were in a group setting, and for prior notice when Bridgeo would be attending a meeting with her as alleged in Paragraphs 142-144, 156, 169, 171, 175, and 179 of the Amended Verified Complaint. Defendants objected to the use of the term "accommodations" in connection with the alleged requests, save for "leaves of absence," and stated that responsive documents have been produced "as they are maintained in the ordinary course of business."

As noted in our discussion of Interrogatory No. 10 above, Defendants' objection to the term "accommodations" is improper given Ms. Wong's ADA and Chapter 151B claims. While Defendants represent that documents have been produced, the written response does not confirm that ***all*** responsive documents have been located and produced. Given the specificity of Request No. 11, including, in particular, "calendar entries or proposals from any potential third-party mediator," we expect a comprehensive production. Given that Veson rejected Ms. Wong's request for a third-party mediator on the basis of cost, the absence of any documents regarding that cost (or any other communications between Veson and Ms. Wong's suggested mediator, for that matter) were lacking from Defendants' initial production. Please confirm that all documents reflecting these specific requests, and Veson's responses or discussions about them, have been produced.

**Request No. 14:** All emails, Slack messages, or other documents in which Ms. Wong complained that the relocation of Veson's Chief People Officer and the Human Resources team in 2024 was retaliatory. Defendants stated that "Documents responsive to this request (if any) will be produced as they are maintained in the ordinary course of business."

The phrase "(if any)" suggests that Defendants may not be fully acknowledging Ms. Wong's complaints about the retaliatory nature of the office relocation. This is directly relevant to her retaliation claims, and it is likely that there was some further communications about this issue via text messages, Slack messages, and emails (not just ones including Ms. Wong), among other forms of communication. Please confirm that a diligent search has been conducted for these specific types of communications and that all such documents will be produced without qualification.

**Request No. 15:** All documents concerning Ms. Wong's reports of resistant, exclusionary, and retaliatory behavior by Unflat and/or other employees in Veson's Human Resources Department as alleged in the Amended Verified Complaint, including, but not limited to, documents



reflecting Veson's response(s). Defendants objected on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome. Defendants also objected to this request to the extent that it seeks disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of Defendants concerning the litigation or that it seeks documents protected by attorney client privilege, and work product. Defendants further objected because "Plaintiff never reported 'resistant, exclusionary, and retaliatory behavior' by 'other employees' in the Human Resources department during her employment." Defendants stated that responsive documents "(if any) will be produced as they are maintained in the ordinary course of business."

As previously stated, Defendants' objections are improper given the direct relevance of Request No. 15 to Ms. Wong's claims of retaliation and the undermining of her role as General Counsel. For example, the RACI exercise with Ms. Wong and Unflat (described in Paragraphs 165-166 of the Amended Verified Complaint) occurred as direct result of Ms. Wong's report of resistant, exclusionary, and retaliatory behavior, yet Defendants have not produced any documents related to that exercise. Paragraphs 75-78 of the Amended Verified Complaint contain allegations about communications among Ms. Wong, Margaret Mo, and other members of the Human Resources team concerning an employment agreement for the French Company's founder and former CEO in January/February 2024 and a separation agreement for the French Company's CFO in May 2024, yet Defendants have yet to produce all documents on these issues. Moreover, the Protective Order [Dkt. No. 21, at 2, 3] permits the designation of "Confidential Discovery Material" for "records relating to confidential internal investigations," which alleviates Defendants' purported concerns about confidentiality. Please conduct a full and complete search for all documents responsive to Request No. 15 and produce them without qualification. If any documents are redacted or withheld based on privilege, please provide a privilege log.

**Request No. 17:** To the extent not covered by any foregoing Request, all documents concerning any pranks that Bridgeo has played on a Veson colleague including, but not limited to, documents reflecting any disciplinary action taken against Bridgeo as a result of such pranks and Veson policies implicated by such pranks. Defendants objected on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome. Subject to this objection, Defendants stated: "none."

As with Interrogatory No. 17, this request is relevant because Defendants asserted in their Position Statement that Bridgeo has a "history of playing pranks." Defendants' response that no responsive documents exist is directly contradicted by their answer to Interrogatory No. 17 where they describe two such pranks that occurred at Veson. Indeed, according to the Position Statement, one such prank involved Bridgeo sending a Teams message from another employee's



account stating, "I like cats." Please produce any documents related to these pranks, including the Teams message described in the Position Statement and any responsive messages, internal communications about the pranks, incident reports, or disciplinary records.

**Request No. 18:** All documents concerning any complaint and/or investigation into any alleged act of wrongdoing, misconduct, discrimination, harassment, and/or retaliation by any member of Veson's Senior Leadership Team (i.e., Bridgeo, John Veson, Riley, Unflat, Eric Christofferson, Ben Thurecht, Jesse Dilanni, Russ Hubbard, and/or Ms. Wong) from January 2020 through December 31, 2024, including, but not limited to, documents reflecting the outcome of each such investigation. Defendants objected on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome. Defendants also objected to this request to the extent that it seeks disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of Defendants concerning the litigation or that it seeks documents protected by attorney client privilege and work product. Defendants further objected to this request because it seeks confidential information pertaining to individuals who are not parties to the instant lawsuit. Defendants further objected to this request to the extent that it seeks documents that are neither relevant to a claim or defense of any party to this litigation nor proportional to the needs of the case. Subject to these objections, Defendants stated that "nonprivileged documents concerning the complaint and investigation into Plaintiff's complaint against Mr. Bridgeo have been produced as they are maintained in the ordinary course of business."

Defendants' objections are largely boilerplate and insufficient to justify withholding all responsive documents. As with Interrogatory No. 15, information about other investigations into alleged acts of wrongdoing, misconduct, discrimination, harassment, and/or retaliation by members of the senior leadership is highly relevant to establishing patterns of behavior, the existence of a hostile work environment, and Veson's response to such allegations. Ms. Wong is aware of at least *four* such investigations during the requested timeframe. Such information is also relevant to establishing that in April/May 2023, Ms. Wong was directed by Bridgeo (purportedly based on the Board's decision) to personally investigate allegations of sex discrimination against her own manager – a member of the senior leadership team – rather than retain a third-party investigator as she had recommended. Ms. Wong is aware that an engagement letter and emails between her and Giselle Joffre (who was with Foley Hoag at the time) concerning that issue exist on Veson's systems. Moreover, the Protective Order [Dkt. No. 21, at 2, 3] explicitly allows for the designation of "Confidential Discovery Material" for "personally identifying information" and "records relating to confidential internal investigations," which can address Defendants' purported concerns about the privacy of non-parties and confidentiality. Please produce all responsive documents, and for any withheld, provide a privilege log detailing the basis for the privilege claim for each specific document.



Jamie Kessler, Esq.
Eve Keller, Esq.
August 20, 2025
Page 15

**Request No. 20:** Documents sufficient to show Veson's budgets and financial statements, broken down by month (or quarter), including documents sufficient to show all of Veson's revenues and the sources of those revenues from January 1, 2024 through the present. Defendants objected on the grounds that it is overly broad, unduly burdensome, and premature, and not relevant or proportional to the needs of the case. Subject to these objections, Defendants stated that they "will supplement this response following the liability-phase of the case, if necessary."

This information is directly relevant to Ms. Wong's potential damages, including punitive damages, and to valuing the equity she would have been entitled to had she not been constructively discharged. Delaying production until after a "liability-phase" is inappropriate, as financial information is often necessary for expert witness preparation and settlement discussions, and a bifurcation of discovery on damages or of the trial has not been agreed upon at this point. In addition, Defendants' objection that Request No. 20 is unduly burdensome is unwarranted because Ms. Wong seeks only documents "sufficient to show" the requested information. Finally, the Protective Order [Dkt. No. 21, at 3] defines "Confidential Discovery Material" to include "non-public revenue, cost, income, pricing, margin, profit, loss, income statements, balance sheets, cash flow, sources and uses of cash, cash difference, or other non-public financial data," which provides a mechanism to protect the sensitive nature of this financial information. Please produce these financial documents promptly.

**Request No. 21:** Documents sufficient to show Veson's financial projections, including projected revenues and the sources of those projected revenues. Defendants responded: "See Defendants' response to Request No. 20."

As with Request No. 20, the information sought in Request No. 21 is relevant to damages and equity valuation. In addition, Defendants' objection that Request No. 21 is unduly burdensome is unwarranted because Ms. Wong seeks only documents "sufficient to show" the requested information. Furthermore, the Protective Order [Dkt. No. 21, at 3] allows for the designation of such financial data as "Confidential Discovery Material." Please produce these financial projection documents promptly.

**Request No. 22:** To the extent not covered by any foregoing Request, documents sufficient to show Veson's financial status in order to value the equity set forth in the Class B Units Award Letter given to Ms. Wong and dated October 25, 2022. Defendants responded: "See Defendants' response to Request No. 20."

As with Request Nos. 20 and 21, the information sought in Request No. 22 is explicitly requested for the purpose of valuing Ms. Wong's equity, which is a component of her damages



Jamie Kessler, Esq.
Eve Keller, Esq.
August 20, 2025
Page 16

claim. Therefore, it is directly relevant. In addition, Defendants' objection that Request No. 22 is unduly burdensome is unwarranted because Ms. Wong seeks only documents "sufficient to show" the requested information. Furthermore, the Protective Order [Dkt. No. 21, at 3] provides a mechanism to protect the confidentiality of this financial information as "Confidential Discovery Material." Please produce documents responsive to Request No. 22 without further delay.

**Request No. 23:** All Slack messages between Ms. Wong and Bridgeo, Ms. Wong and Unflat, or among all three together. Defendants objected on the grounds that it is overly broad, and unduly burdensome. Subject to these objections, Defendants stated that "Slack messages between Plaintiff and Mr. Bridgeo, Plaintiff and Ms. Unflat and among all three concerning claims or defenses relevant to the subject matter of this litigation will be produced as they are maintained in the ordinary course of business."

While Defendants have produced a handful of Slack messages between Ms. Wong, Bridgeo, and/or Unflat, the Amended Verified Complaint details numerous incidents that were likely discussed over Slack. For example, Defendants have produced a Slack message exchange among Ms. Wong, Bridgeo, and Unflat *while the February 6, 2024 All Hands meeting was in progress*, right after Ms. Wong discovered the first rat that Bridgeo had left in her office. *See* DEFENDANTS_000017, 000052, and 000104). Unflat initiated that exchange by asking if Ms. Wong wanted to submit a request to housekeeping (concerning the rat) or plot revenge (on Bridgeo). It is highly likely that the only way for Unflat to have learned about Ms. Wong's discovery was via a separate Slack message (or other message) sent from Bridgeo to Unflat during the All Hands meeting. Please confirm that all Slack messages between and among these individuals concerning the claims or defenses in this Action have been searched for and that a full and complete production of such messages, without any selective filtering beyond relevance, has been or will be made.

**Request No. 24:** All documents, including, but not limited to, emails and Slack messages, between and among Ms. Wong, her Legal team, Riley, and Veson's Human Resources Department employees concerning the French Company's CFO's resignation from Veson and/or his ongoing post-employment obligations to Veson. Defendants objected on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and irrelevant to any of the claims or defenses in this matter. Subject to these objections, Defendants stated that "documents related to Shipfix employment contracts and obligations have been produced as they are maintained in the ordinary course of business, and (DEFENDANTS_000035-000036, 000046-000049, 000055, 000064-000065)."



Beck Reed Riden LLP

Jamie Kessler, Esq.
Eve Keller, Esq.
August 20, 2025
Page 17

Request No. 24 is highly relevant to Ms. Wong's claims that Defendants undermined her ability to perform her role as General Counsel, exposed her to unmerited criticism, and retaliated against her. Specifically, Ms. Wong has alleged that HR attempted to keep her and her team from negotiations of key employment agreements and a separation agreement, which led to a crucial omission in the French Company's CFO separation agreement. Consequently, Defendants' objection of irrelevance is unfounded. Furthermore, the documents cited within Defendants' response to Request No. 24 pertain to employment contracts in connection with the onboarding of French Company employees, but none of them concern communications regarding the French Company's CFO's resignation from Veson in the May 2024 timeframe, negotiations over his separation agreement, and his ongoing post-employment obligations to Veson. Ms. Wong recalls that there are Slack messages between or among herself and Riley and Unflat regarding the French Company's CFO's garden leave and restrictive covenants, and that there are emails between or among herself and Margaret Mo and other Human Resources employees concerning a review of the French Company's CFO's separation agreement. Please search for and produce these and any other documents responsive to Request No. 24.

**Request No. 25:** All documents, including, but not limited to, emails and Slack messages, between and among Ms. Wong and Veson's Human Resources Department employees concerning Veson's closing of its Polish subsidiary. Defendants objected on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and irrelevant to any of the claims or defenses in this matter. Subject to these objections, Defendants stated that "documents concerning employees located in Poland following closure of the Polish subsidiary have been produced as they are maintained in the ordinary course of business, and (DEFENDANTS_000026-000029, 000038-000040, 000071)."

Similar to Request No. 24, this Request is relevant to Ms. Wong's claim that Unflat unfairly chastised her for supposedly not keeping Human Resources involved in a situation where Ms. Wong had, in fact, copied Human Resources on communications regarding the Polish subsidiary, and used a mischaracterization to criticize her. Please confirm that all responsive documents have been produced.

**Request No. 28:** All documents constituting Bridgeo's personnel file. This Request is not time limited. Defendants objected on the grounds that it is overly broad, and not properly limited in time or scope. Subject to this objection, Defendants stated that "Mr. Bridgeo's 2024 performance evaluation and any disciplinary documents have been produced."

Request No. 28 is relevant to Bridgeo's conduct, performance, and any prior complaints or disciplinary actions, which directly pertain to Ms. Wong's claims of harassment and discrimination. Defendants' objection about improper scope is unwarranted – Bridgeo's full



Jamie Kessler, Esq.
Eve Keller, Esq.
August 20, 2025
Page 18

personnel file, not just 2024 documents, could reveal a pattern of behavior or relevant background that was known or should have been known to Veson. Moreover, noticeably lacking from Defendants' production is Bridgeo's Roster 360 Report, which was conducted in the April/May 2024 timeframe, and would contain relevant information as to how Bridgeo's performance and how he is perceived by his Veson colleagues. Also missing from Defendants' production is any documentation of the follow-up meetings between Bridgeo and Riley or of Bridgeo's completion of "conflict resolution or sensitivity training," both of which were referenced in Veson's March 22, 2024 memo to Bridgeo (DEFENDANTS_000139-000140). Please produce Bridgeo's full personnel file.

**Request No. 30:** All documents concerning Unflat's departure from Veson. Defendants objected on the grounds that it is overly broad and unduly burdensome, seeks disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney, seeks documents protected by attorney-client privilege, and seeks confidential information pertaining to an individual who is not party to the instant lawsuit.

While Unflat is not a direct party, her role as Veson's Chief People Officer at the time of many of the events that form the basis of Ms. Wong's claims, her role in investigating Ms. Wong's complaints (and complaints of other Veson employees concerning conduct by senior leadership team members), and her alleged involvement in retaliatory conduct against Ms. Wong all make information regarding the circumstances of and reasons for her departure relevant to this Action. Such information could shed light on Veson's assessment and handling of Unflat's conduct or any underlying issues related to the Human Resources Department's actions as alleged in the Complaint. The Protective Order [Dkt. No. 21, at 2, 3] allows for the designation of "Confidential Discovery Material" for "personnel information" and "personally identifying information," which addresses any confidentiality concerns. Please produce responsive documents or provide a privilege log for any documents withheld.

**Request No. 31:** All documents constituting the personnel file of Plaintiff's replacement at Veson. Defendants objected on the grounds that it is overly broad and unduly burdensome, seeks confidential information pertaining to a non-party, and seeks documents not relevant or proportional to the needs of the case.

This information is relevant to Ms. Wong's constructive discharge claim and potential damages, as her replacement's compensation, roles, and responsibilities could provide insight into the value of the position she was forced to leave. While the replacement is a non-party, this information is not irrelevant, and the Protective Order [Dkt. No. 21, at 2, 3] provides a mechanism to protect confidentiality through the designation of "Confidential Discovery



Jamie Kessler, Esq.
Eve Keller, Esq.
August 20, 2025
Page 19

Material" for "compensation information," "employment agreements," "personnel information" and "personally identifying information." Please produce responsive documents.

**Request No. 34:** All documents concerning any Veson policy concerning the preservation or destruction of documents, generally and with respect to documents that may be relevant to this Action. Defendants objected on the grounds that it is overly broad and unduly burdensome. Subject to this objection, Defendants stated that they "have retained all documents related to Plaintiff's claims in this matter."

While Defendants state that documents related to Ms. Wong's claims have been retained, Request No. 34 seeks Veson's policies regarding preservation and destruction of documents (including those in electronic form) more generally. Such policies are relevant to ensuring that all discoverable information created, maintained, or stored on Veson's systems and in its employees' personal devices has, in fact, been preserved and to assess any potential spoliation issues. Please produce all documents responsive to Request No. 35.

**Request No. 36:** All documents concerning legal advice sought by or provided to Bridgeo and/or Veson's Human Resources Department in which Ms. Wong was not copied or consulted from January 1, 2022 through her last day at Veson. Defendants objected on the grounds that it is overly broad and unduly burdensome, not relevant or proportional to the needs of the case, and seeks disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney and documents protected by attorney-client privilege. Subject to these objections, Defendants stated that "documents responsive to this request have been produced as they are maintained in the ordinary course of business."

Request No. 36 is highly relevant to Ms. Wong's claim that Bridgeo and Veson's Human Resources team consistently sought to exclude her from important decisions and communications within the purview of the Legal team, undermining her authority as General Counsel. Defendants' objection to relevance is, therefore, unfounded. The production to date does not appear to include all responsive documents such as calendar entries of meetings with potential outside counsel or engagement letters. While some documents may contain privileged information, factual communications that demonstrate this pattern of exclusion are discoverable. We request a complete production of non-privileged documents, and a privilege log for any documents withheld, specifically identifying the nature of the legal advice and the basis for the privilege claim.

**Request No. 39:** To the extent not covered by any foregoing Request, all instant messages (e.g., Slack, Teams, WhatsApp, iMessage) that may, in any way, concern any of the material facts or circumstances raised in this Action. Defendants objected on the grounds that it seeks disclosure



Jamie Kessler, Esq.
Eve Keller, Esq.
August 20, 2025
Page 20

of mental impressions, conclusions, opinions, or legal theories of an attorney and documents protected by attorney-client privilege. Subject to these objections, Defendants stated that "nonprivileged documents responsive to this request will be produced as they are maintained in the ordinary course of business."

As mentioned previously, we are concerned that not all instant messages responsive to Request No. 39, particularly Slack messages, have been produced by Defendants. Such messages are a critical source of communication in modern workplaces, and it is highly likely that many more responsive messages by, between, or among Bridgeo, Riley, Unflat, and members of Veson's senior leadership team exist. Please confirm that a full and complete search for these messages has been conducted and that all non-privileged messages, regardless of who sent them, will be produced. If any are withheld on privilege grounds, please produce and include them in a privilege log.

**Request No. 41:** To the extent not covered by any foregoing Request, all telephone records, including, but not limited to, text messages that may, in any way, concern any of the material facts or circumstances raised in this Action. Defendants objected on the grounds that it is overly broad and unduly burdensome, not relevant or proportional to the needs of the case, and seeks disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney and documents protected by attorney-client privilege. Subject to these objections, Defendants stated that "nonprivileged documents responsive to this request have been produced (DEFENDANTS_000119)."

Defendants' boilerplate objections are unmerited and lack sufficient specificity. Text messages are a common form of communication and may contain highly relevant information. Defendants' production of only one Bates-stamped document (*e.g.*, DEFENDANTS_000119) is extremely limited given the scope of the case. For example, as previously explained with respect to Request No. 23, it is highly likely that the only way for Unflat to have learned about Ms. Wong's discovery of the first rat was via a Slack message (or text message) sent from Bridgeo to Unflat during the All Hands meeting that took place on February 6, 2024. Please confirm that a comprehensive search for text messages of all relevant individuals (*e.g.*, Bridgeo, Riley, Unflat, Veson, senior leadership team members, and Board members) has been conducted – on both personal and work devices – and that all non-privileged, responsive text messages will be produced. If any are withheld on privilege grounds, a privilege log must be provided.

**Request No. 42:** To the extent not covered by any foregoing Request, all diaries, calendars, desk pads, appointment books, or notes that may, in any way, concern any of the material facts or circumstances raised in this Action. Defendants objected on the grounds that it is overly broad and unduly burdensome, not relevant or proportional to the needs of the case, and seeks



Jamie Kessler, Esq.
Eve Keller, Esq.
August 20, 2025
Page 21

disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney and documents protected by attorney-client privilege. Subject to these objections, Defendants stated that "nonprivileged documents responsive to this request have been produced (DEFENDANTS_000101-000103)."

Similar to the responses to previous Requests for specific types of communications, Defendants' boilerplate objections here are unwarranted. Diaries, calendars, and notes can contain crucial details about meetings, events, and individual perspectives related to Ms. Wong's claims. Defendants' production of only three Bates-stamped documents – notes from two conversations – is extremely limited under the circumstances. For example, calendar entries reflecting the training that Bridgeo was directed to take, calendar entries of Ms. Wong's leaves of absence in 2023 and 2024, calendar entries and/or notes of Board meetings, and calendar entries of witness interviews following Ms. Wong's complaints, are just a few types of responsive documents that we would expect to exist and be produced. Please confirm that a thorough search for such documents for all relevant individuals (*e.g.*, Bridgeo, Riley, Unflat, Veson, senior leadership team members, and Board members) has been conducted and that all non-privileged, responsive documents will be produced. If any are withheld on privilege grounds, a privilege log must be provided.

**Request No. 45:** Documents sufficient to identify all persons involuntarily terminated by Veson from January 1, 2021 through the present. Defendants objected on the grounds that it is overly broad and unduly burdensome, seeks confidential information pertaining to non-parties, and seeks documents not relevant or proportional to the needs of the case.

As an initial matter, Defendants' objection that Request No. 45 is unduly burdensome is unwarranted because Ms. Wong seeks only documents "sufficient to show" the requested information. Request No. 45 is relevant to identifying potential patterns of termination that could be related to protected characteristics or activities, which could support Ms. Wong's claims of discriminatory and retaliatory constructive discharge. Involuntary terminations for violations of Veson policies would also be relevant in showing how important Veson truly considers its policies against discrimination, retaliation, and a respectful workplace to be in comparison to ones not implicated by Ms. Wong's claims. While responsive documents involve non-parties, the Protective Order [Dkt. No. 21, at 2, 3] permits the designation of "Confidential Discovery Material" for "personnel information" and "personally identifying information," which can protect their privacy. Please produce responsive documents.

**Request Nos. 49 and 50:** All documents identified, consulted, or relied on by Defendants in preparing their response to Ms. Wong's Charge filed with the Massachusetts Commission Against Discrimination and their answer to the Amended Verified Complaint. Defendants



Jamie Kessler, Esq.
Eve Keller, Esq.
August 20, 2025
Page 22

objected on the grounds of overbreadth, vagueness with respect to the term "consulted," and to the extent that Request Nos. 49 and 50 seek information protected by the attorney-client privilege or work product doctrine. Defendants further respond that, subject to these objections, "…all non-privileged documents responsive to this request have been produced as they are maintained in the ordinary course of business."

While certain legal advice may be privileged, factual summaries or reports of investigations into Ms. Wong's claims are unlikely to be entirely protected. Veson's knowledge of allegedly unlawful conduct and its responses to Ms. Wong's complaints of discrimination, harassment, and retaliation are critical to proving Veson's liability for the alleged harassment and its failure to take appropriate corrective action. Factual information is generally discoverable, even if contained within a privileged document. Consequently, any factual information recorded from the interviews conducted with Ms. Wong, Bridgeo, Unflat, and Beldekas – as identified in DEFENDANTS_000554 – are relevant. Likewise, the "Immediate notification to Sean Bridgeo and John Veson" as described in that same document is also clearly relevant and does not appear to be privileged. Please provide responsive documents with any privileged information redacted, as well as a privilege log for any responsive documents that have been redacted and/or withheld, detailing the basis for the privilege claim for each specific document.

In addition, we would expect Veson to have responsive documents in its possession that reflect the leave that Ms. Wong took in late 2023, as it relates to her claim for violation of the Massachusetts Earned Sick Time Law. Please conduct a search for such documents and confirm that they have been or will be produced.

**Request No. 51:** Any documents that constitute, relate to, or refer to any communication between Bridgeo and any other current or former Veson employee(s) concerning the subject matter of this Action. Defendants objected to Request No. 51 on the grounds of overbreadth and to the extent that it seeks information protected by the attorney-client privilege or work product doctrine. Defendants then stated that, subject to these objections, "…all non-privileged documents responsive to this request have been, or will be after further reasonable search, produced as they are maintained in the ordinary course of business."

We look forward to further production from Defendants in response to Request No. 51. In addition to our previously stated general (and specific) concerns about a lack of Slack messages, email messages, or text messages to or from Bridgeo produced to date, we also would expect there to be, for example, an email message on Veson's systems from Bridgeo to Boey Yu in which he asked her to print a document for him. Please provide all responsive documents with any privileged information redacted, as well as a privilege log for any responsive documents that

**B│R│R ⦀**
**Beck Reed Riden** ᴸᴸᴾ

Jamie Kessler, Esq.
Eve Keller, Esq.
August 20, 2025
Page 23

have been redacted and/or withheld, detailing the basis for the privilege claim for each specific document.

**Request No. 53:** Any documents which constitute, relate to, or refer to any communication between Veson and any third parties, excluding its attorneys, concerning Ms. Wong's complaints, performance, or the subject matter of this Action. Defendants objected to Request No. 53 on the grounds of overbreadth and to the extent that it seeks information protected by the attorney-client privilege or work product doctrine. Defendants then stated that, subject to these objections, "…documents responsive to this request (if any) will be produced as they are maintained in the ordinary course of business."

Notwithstanding Defendants' objections, we look forward to a comprehensive production of responsive documents. Given that Veson rejected Ms. Wong's request for a third-party mediator on the basis of cost, the lack of any documents regarding that cost (or any other communications between Veson and Ms. Wong's suggested mediator, for that matter) from Defendants' initial production was surprising. Furthermore, while certain legal advice may be privileged, factual summaries or reports of investigations into Ms. Wong's claims are unlikely to be entirely protected. Veson's knowledge of allegedly unlawful conduct and its responses to Ms. Wong's complaints of discrimination, harassment, and retaliation are critical to proving Veson's liability for the alleged harassment and its failure to take appropriate corrective action. Consequently, factual information contained within communications between Veson and the third-party investigator that it retained to investigate Ms. Wong's complaints is discoverable. The initial notifications to Bridgeo and John Veson of Ms. Wong's complaints about the rat prank (as identified in DEFENDANTS_000554) are also discoverable. Please provide a privilege log for any responsive documents that have been redacted and/or withheld, detailing the basis for the privilege claim for each specific document.

**Request No. 55:** Request No. 55 seeks any documents which constitute, relate to, or refer to Veson's hiring of Unflat including, but not limited to, the results of any background checks and communications with members of Veson's Board of Directors, search firms, and references provided by Unflat. Defendants objected to Request No. 55 on the basis that it is overly broad, irrelevant and not likely to lead to the discovery of admissible evidence, and because Unflat is a third party to the Action.

The documents sought in Request No. 55 are relevant for the reasons previously explained regarding the relevance of Interrogatory No. 19 – the Amended Verified Complaint alleges that Unflat had previously worked under Bridgeo's direct supervisory authority at another employer and that Bridgeo introduced Unflat to Veson as a candidate. This past personal connection and any introduction or endorsement of Unflat by Bridgeo is not only pertinent to



Ms. Wong's allegations that Unflat later allied with Bridgeo and sought to exclude and undermine Ms. Wong, but it also provides context as to why Unflat would have been willing to do so and to also minimize Ms. Wong's internal complaint about the rat prank and other discriminatory conduct. In addition, to the extent that Veson had reservations about hiring Unflat, the reasons could be relevant to supporting Ms. Wong's claims that Unflat engaged in misconduct and performed poorly as Veson's Chief People Officer. While responsive documents involve a non-party, the Protective Order [Dkt. No. 21, at 2, 3] permits the designation of "Confidential Discovery Material" for "personnel information" and "personally identifying information," which can protect their privacy. Please produce responsive documents.

**Request No. 57:**  Request No. 57: All documents concerning any court complaint and/or administrative charge alleging any wrongdoing, misconduct, discrimination, harassment, and/or retaliation by Bridgeo and/or Veson from January 2020 through the present, including, but not limited to, documents reflecting the outcome of each such complaint and/or charge. Defendants objected to Request No. 57 on the basis that it is overly broad, vague and ambiguous with respect to the terms "wrongdoing" and "misconduct," irrelevant and not likely to lead to the discovery of admissible evidence, and to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine. Defendants further state that: "Subject to and without waiving these objections and limited to claims similar to those asserted by Plaintiff in this action, Defendants state none except those filed by Plaintiff."

Request No. 57 is substantially similar to Interrogatory No. 22, and Defendants raised similar objections in their answer to Interrogatory No. 22. However, Defendants then answered Interrogatory No. 22 by simply stating: "Subject to and without waiving this objection, Defendants state none, except Plaintiff" without the more narrowed response of "limited to claims similar to those asserted by Plaintiff in this action" that Defendants set forth in response to Request No. 57. Please clarify whether there have been *any* court complaints and/or administrative charges alleging any wrongdoing, misconduct, discrimination, harassment, and/or retaliation by Bridgeo and/or Veson from January 2020 through the present other than the ones filed by Ms. Wong. Ms. Wong maintains that documents concerning all such complaints or administrative charges are responsive to Request No. 57 and should be produced, if they exist.

**Request No. 58:**  Request No. 58 seeks documents sufficient to show all Veson employees at the Senior Vice President level and above and their name, gender, title(s), and compensation from January 1, 2020 through the present. Defendants object to Request No. 58 on the grounds that it is overly broad and unduly burdensome, and they further object because it seeks confidential information about individuals who are not parties to the Action.



Defendants' objection that Request No. 58 is overly broad unduly burdensome is unwarranted because Ms. Wong seeks only documents "sufficient to show" the requested information. Moreover, the information requested is narrowed to the year in which she began working for Veson through the present, and to those employees who were at the Senior Vice President level or above, further undercutting any objection based on overbreadth. Furthermore, the Protective Order [Dkt. No. 21, at 2, 3] explicitly allows for the designation of "Confidential Discovery Material" for "compensation information," "employment agreements," "plans," and "personnel information," which can address Defendants' purported concerns about the privacy of non-parties and confidentiality. Please produce responsive documents.

**Request No. 63:** All documents concerning Veson's efforts to fill or restructure Ms. Wong's role following her departure from Veson, including any internal or external job postings, changes to the role's title or responsibilities, and hiring communications. Defendants object to Request No. 63 as overly broad, unduly burdensome, and seeking information about individuals who are not parties to this Action. Subject to these objections, Defendants further respond that "there are no documents in their possession, custody or control related to any effort to restructure Plaintiff's role following her departure."

Defendants' objections on the grounds of overbreadth and burden are lacking in merit without more explanation from Defendants – documents concerning Veson's efforts to fill one position would not seem to involve a burdensome search or high volume of documents. Moreover, the Protective Order [Dkt. No. 21, at 2, 3] explicitly allows for the designation of "Confidential Discovery Material" for "compensation information," "employment agreements," "candidates information," and "personnel information," which can address Defendants' purported concerns about the privacy of non-parties and confidentiality. Please search for and produce responsive documents.

**Request No. 67:** Request No. 67 seeks all communications between Veson and any person or entity involved in assisting with public relations, media, or employee communications in response to the issues raised by Ms. Wong's internal complaints or this Action. Defendants respond that "there are no non-privileged documents in their possession, custody or control related to communications with any person or entity involved in assisting with public relations or media in response to the issues raised by Plaintiff."

Defendants' response suggests that privileged documents responsive to Request No. 67 exist. Please confirm whether that is the case and provide a privilege log for any responsive documents that withheld, detailing the basis for the privilege claim for each specific document.



Jamie Kessler, Esq.
Eve Keller, Esq.
August 20, 2025
Page 26

**Request No. 68-72:**  Request Nos. 68-72 generally seek documents reflecting Bridgeo's compensation, personal assets, and available insurance policies. Defendants object to these Request Nos. 68 and 69 as overly broad, unduly burdensome, and irrelevant. In addition to these objections, Defendants raise the additional objection of "premature" to Request Nos. 70, 71, and 72, and they further respond to these particular Requests that "Subject to and without waiving these objections, Defendants will supplement this response following the liability-phase of the case, if necessary."

Defendants' objections are unmerited. As another member of Veson's senior leadership team, Bridgeo's compensation from Veson is relevant to the issue of whether Ms. Wong was treated disparately from male members of that team. In addition, changes to Bridgeo's compensation (or the lack thereof) as a result of Ms. Wong's complaints of discrimination and retaliation are relevant to determining whether Veson took appropriate measures. The information sought in these Requests is also relevant for the reasons explained previously concerning Interrogatory No. 25. Moreover, it is difficult to understand how the search and production for either the specific documents identified in Request Nos. 68 and 69 (equity or other agreements, W-2s, and 1099s) or documents merely "sufficient to show" the information requested in Request Nos. 70-72 could be overly broad or unduly burdensome for Defendants. Delaying production until after a "liability-phase" is inappropriate, as financial information is often necessary for settlement discussions and a bifurcation of discovery on damages or of the trial has not been agreed upon at this point. Please produce responsive documents.

Thank you in advance for your attention to these matters. I look forward to discussing these issues with you during our meet and confer.

Very truly yours,

*/s/Heather Carlson Krauss*

Heather Carlson Krauss