**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| LEVINA WONG,<br><br>         Plaintiff,<br><br>v.<br><br>VESON NAUTICAL LLC AND SEAN<br>BRIDGEO,<br><br>         Defendant. | Civil Action No. 24-cv-12752-IT |

## <u>DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY</u>

Defendants Veson Nautical LLC ("Veson") and Sean Bridgeo ("Bridgeo") (collectively, "Defendants") respectfully submit this Opposition to Plaintiff's Motion to Compel Discovery (the "Motion"). The motion should be denied because the discovery Plaintiff seeks falls well outside the scope permitted by Fed. R. Civ. P. 26(b)(1): it is irrelevant to the claims and defenses in this case, disproportionate to the needs of the case, or protected by the attorney-client privilege and/or attorney work product doctrine.

This case presents narrow claims, not a basis for limitless discovery. Plaintiff, Veson's former General Counsel, tries to recast a previously cordial working relationship as gender discrimination and harassment based mainly on a single prank involving three toy rats. She likewise recasts routine business decisions, including the handling of company transactions by the Chief Financial Officer, Sean Bridgeo, during her leave, the retention of outside counsel, and her alleged exclusion from the negotiation of a separation agreement as retaliation, and efforts to

undermine her authority. But her sweeping discovery requests far exceed those claims and seek information that is neither relevant nor proportional to the needs of the case.[1]

Defendants have produced 1547 non-privileged documents and provided discovery relevant to Plaintiff's claims. Yet Plaintiff seeks to expand this case far beyond her own employment and the claims actually at issue. Her requests sweep in any unrelated complaints by other employees about Veson's senior leadership, any investigations into those matters, documents concerning the departure of Kerry Unflat, Veson's Chief People Officer, which occurred after Plaintiff's resignation, and attorney work product relating to the investigation of Plaintiff's claims. She also seeks to force additional ESI searches for the email accounts of additional Human Resources and legal personnel, as well as members of Veson's Board of Directors. These demands are not targeted at any claim or defense in this case; they are overbroad, disproportionate, and improper. Defendants have appropriately resisted these overbroad and abusive requests and respectfully ask the Court to bring document production to a close so that the parties may proceed to depositions with a clear understanding of the full scope of document production in this case.

## RELEVANT FACTUAL BACKGROUND AND THE EXCHANGE OF RELEVANT DISCOVERY

### A. Plaintiff Retains Counsel And A Third Party Investigator Investigates Her Claims At The Direction of Veson's Outside Counsel

This case centers around a February 6, 2024 prank – Bridgeo placed three toy rats in Plaintiff's office that day. Am. Compl. ¶¶ 99–103. Prior to this date, Plaintiff had never reported any issues concerning her employment with Veson and Plaintiff acknowledged that Bridgeo believed them to be friends. Indeed, written documents produced in this case including emails and Slack messages between Plaintiff and Bridgeo evidence a collegial, friendly relationship between

---

[1] Plaintiff also has peripheral claims concerning her request for an ADA accommodation that Veson hire a mediator, and claims relating to her earned sick time, which do not appear to be related to the subject of her Motion.

the two.  While Slack messages show Plaintiff joking with Ms. Unflat and Bridgeo about the rat prank on February 6, the very next day, on February 7, 2024, Plaintiff told Ms. Unflat that, after further reflection on the prank and "after talking to an attorney," she had "decided that [she has] been suffering from bullying and microagressions." Plaintiff further stated that she did not believe she could continue working at Veson. Days later, Plaintiff informed Ms. Unflat that counsel would be representing her in connection with the investigation into her concerns. She identified that counsel as Nicole Corvini (née Daly) of Beck Reed Riden and provided Ms. Unflat with counsel's email address.

Veson's outside counsel, Elise Busny of Pinkham Busny LLP, retained Renee Jackson, Esquire, Founder and CEO of Blue Oak Legal, to investigate Plaintiff's allegations and make factual findings so that Attorney Busny could render legal advice to Veson. See Defendants' privilege log, attached as Exhibit A, identifying documents withheld in whole or in part, or produced in redacted form, on the basis of the attorney-client privilege and/or the work-product doctrine.

Ms. Jackson commenced her investigation on or about February 12, 204, interviewing Plaintiff on February 14, 2024. See Defendants' Answers to Plaintiff's First Set of Interrogatories, Interrogatory No. 15, attached as Exhibit B. Over the following several days, she also interviewed Demetri Beldekas, VP of Finance, Ms. Unflat, Bridgeo, and Sean Riley, Veson's President and Chief Operating Officer. See id. The third-party investigator concluded that there was insufficient evidence to show that Mr. Bridgeo's actions were based on Plaintiff's gender or race or that there had been any retaliation. See id. Ms. Jackson provided Attorney Busny with her privileged investigation report on or about April 8, 2024.

Plaintiff now seeks Ms. Jackson's interview notes and privileged investigation report.

**B.  Defendants ESI Collection And Production**

In response to Plaintiff's First Set of Requests for Production, Defendants produced approximately 1150 documents on or about July 11, 2025, which included relevant Slack channels obtained from Plaintiff and Bridgeo; Plaintiff and Ms. Unflat; Bridgeo and Ms. Unflat; Mr. Riley and Ms. Unflat; and any channels between Plaintiff, Bridgeo, Mr. Riley, and Ms. Unflat (or any combination of those four). Between August and October 2025, counsel exchanged correspondence regarding each side's asserted deficiencies in discovery responses and participated in several meet-and-confer calls, as referenced in Plaintiff's Motion.

As part of that process, Defendants described their search parameters and ESI search terms in a September 26, 2025 email to Plaintiff, attached as Exhibit C. Plaintiff then sent a follow-up letter on October 1, 2025, attached as Exhibit D, identifying her remaining objections after Defendants' September 26 email and the parties' September 18, 2025 meet and confer. Among other things, Plaintiff urged Defendants to search Ms. Unflat's emails and Slack messages with Margaret Mo using terms related to ShipFix—the French company Veson acquired in December 2023—including "ShipFix," "KS," "King and Spalding," "Alice," and "Legal."

Defendants responded with a detailed letter dated October 30, 2025, attached as Exhibit E, addressing the issues raised in Plaintiff's October 1 letter. In an effort to narrow the parties' disputes, Defendants agreed to conduct additional searches, including searches of Slack channels for Plaintiff, Bridgeo, Mr. Riley, and Ms. Unflat using the term "ShipFix," and they produced all responsive documents located through those searches. Defendants also agreed to search Ms. Unflat's Outlook mailbox for "ShipFix" within 10 words of "Levina" or "Wong," and produced any nonprivileged responsive documents. After their initial production, Defendants produced approximately 370 additional documents.

4

On February 19, 2026, Plaintiff again challenged the adequacy of Defendants' searches, asserting that Defendants had not sufficiently searched for responsive documents concerning the resignation of ShipFix's CFO because they had not searched for "ShipFix," "KS," "Alice," or "Legal" without the proximity limitation to "Levina" or "Wong." See Feb. 25, 2026 Email, attached as Exhibit F. Plaintiff also demanded further searches of Margaret Mo's and Boey Yu's email accounts and Slack channels using the terms "ShipFix," "KS," "Alice," and "Legal," regardless of whether Ms. Unflat or Plaintiff was included on those communications.

Plaintiff's Motion now goes further still, seeking searches for communications involving Board members Ayla Ahmed and Christiane Felts.

### C. Plaintiff's Requests Relating To Investigations Concerning Other Employees, Unflat's Departure, And Veson's Financial Information

Finally, in Request No. 18, Plaintiff seeks documents concerning *any* complaint or investigation into *any wrongdoing*, discrimination, or retaliation by any member of Veson's senior leadership team from January 2020 through December 31. See Exhibit C. First, Defendants answered the Request as it relates to Bridgeo – stating that there have not been any other allegations of discrimination, harassment, retaliation or "wrongdoing" made against Bridgeo during his employment with Veson and thus no other workplace investigations. See Exhibits B and C.

However, Defendants objected to producing documents concerning any complaints or investigations involving other employees on the grounds that the term "senior leadership team" is vague and ambiguous; the request is overbroad in that Plaintiff has not alleged any claim against members of the "senior leadership team" save for Bridgeo; and to the extent the documents are protected by attorney-client privilege and work product. See id.

In Requests Nos. 20-22, Plaintiff seeks documents relating to Veson's finances, sources of finances, and future projections which Defendants objected to as overly broad, unduly

burdensome, and premature, and stated that they will supplement their responses following the liability phase of the case, if necessary. See Exhibit C.

In Request No. 30, Plaintiff seeks documents relating to Ms. Unflat's departure. *See* Exhibit C. Defendants objected as this request is overly broad, unduly burdensome, and seeks information not relevant to the claims or defenses asserted in this action, and not likely to lead to the discovery of admissible evidence. See Exhibit C.

## **STANDARD OF REVIEW**

Under Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense and *proportional* to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). However, such discovery must be limited where the proposed discovery "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or is otherwise "outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P 26(b)(2)(c). Importantly, "[t]he party seeking information in discovery over an adversary's objection has the burden of showing its relevance." TG Plastics Trading Co. v. Toray Plastics, No. C.A. 09-336S, 2010 U.S. Dist. LEXIS 23498, at *2 (D.R.I. Mar. 12, 2010) (quoting Caouette v. OfficeMax, Inc., 352 F. Supp. 2d 134, 136 (D.N.H. 2005)). Moreover, "[d]iscovery is not 'a fishing expedition'; parties must disclose some relevant factual basis for their claim before requested discovery will be allowed." Milazzo v. Sentry Ins., 856 F.2d 321, 322 (1st Cir. 1988).

## ARGUMENT

### A. Plaintiff Is Not Entitled To Attorney-Client Communications Or Attorney Work Product

Plaintiff is not entitled to discover documents protected by the attorney-client privilege or work product rule. To establish attorney-client privilege, the proponent must show that: (1) legal advice was sought; (2) from a professional legal adviser acting in that capacity; (3) the communication related to that purpose; (4) it was made in confidence; (5) by or to the client; (6) with the expectation that it would remain confidential; and (7) absent waiver, it is protected from disclosure. Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002). The privilege protects confidential communications made for the purpose of obtaining or rendering legal advice. In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc.), 274 F.3d 563, 571 (1st Cir. 2001); In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003).

The work-product doctrine is separate and independently protects documents and tangible things prepared in anticipation of litigation or for trial by or for a party or its representative. Fed. R. Civ. P. 26(b)(3)(A); Hickman v. Taylor, 329 U.S. 495, 510 (1947); In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d 1007, 1014 (1st Cir. 1988). That protection extends to materials prepared because of litigation, whether litigation is pending or reasonably anticipated, but not to documents created in the ordinary course of business or for non-litigation purposes. United States v. Textron Inc. & Subsidiaries, 577 F.3d 21, 29-30 (1st Cir. 2009).  It protects both ordinary work product and opinion work product, with opinion work product—materials reflecting counsel's mental impressions, conclusions, opinions, or legal theories—receiving especially strong protection. In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d 1007, 1014-15 (1st Cir. 1988).

Here, Ms. Jackson's interview notes and investigation report are protected work product because they were prepared for counsel in anticipation of litigation and to assist attorney Busny in rendering legal advice to Veson. To the extent those materials memorialize confidential communications undertaken as part of counsel's legal investigation, they are also protected by the attorney-client privilege.

Plaintiff's argument claiming entitlement to these documents fails because it assumes Attorney Jackson's notes are merely neutral recitations of facts. But her "notes" are not verbatim witness statements or transcripts. An attorney's work product – "all materials prepared 'with an eye towards litigation'" -- is "not freely discoverable without some showing of necessity." In re San Juan Dupont Plaza Hotel Fire Litigation, 859 F.2d 1007, 1014 (1st Cir. 1988); see also In Re Grand Jury Subpoena (Zerendow), 925 F. Supp. 849, 853 (D. Mass. 1995). That distinction is critical. Interview notes typically reveal far more than raw facts: they reflect what counsel or counsel's agent chose to ask, what information was selected for recording, what was omitted as immaterial, and how the information was organized for legal analysis. Id. at 852. Those features directly expose protected mental impressions and litigation strategy. For that reason, the mere fact that witness interviews concern underlying facts does not make counsel-directed notes of those interviews discoverable.

### a. **Plaintiff's "Sword And Shield" Argument Is Misplaced**

Plaintiff's waiver theory fails because Defendants have not placed privileged legal advice "at issue" in this case. Under First Circuit law, waiver does not arise merely because privileged communications may be relevant or because a party generally asserts lawful or good-faith conduct. Rather, waiver occurs only where the privilege holder affirmatively injects counsel's advice, legal review, or protected investigative material into the case to gain a litigation advantage. In re Keeper

of Records (XYZ Corp.), 348 F.3d 16, 25 (1st Cir. 2003); United States v. Desir, 273 F.3d 39, 45 (1st Cir. 2001).

Plaintiff points to two things: interrogatory responses referencing the existence and outcome of an investigation, and Defendants' assertion of a good-faith affirmative defense. Neither suffices. The First Circuit's implied-waiver cases are aimed at situations where a party uses privileged attorney communications as a sword while attempting to preserve the privilege as a shield—for example, by asserting advice of counsel or relying on counsel's legal review as proof of intent, legality, or reasonableness. See In re Keeper of Records (XYZ Corp.), 348 F.3d at 26 (explaining that once a litigant places legal advice given to them at issue, the opposing party should be entitled to all the information on that same subject). That is not what happened here. Defendants have not asserted an advice-of-counsel defense, disclosed privileged attorney-client communications, or otherwise made counsel's advice a substantive component of any claim or defense. At most, Defendants acknowledged that an investigation occurred and identified its general conclusion. That is a far cry from placing privileged legal advice itself at issue.

First Circuit district courts applying that same rule have repeatedly rejected attempts to manufacture waiver from mere references to an investigation or from generalized good-faith allegations untethered to legal advice. Where a party does not intend to rely on advice of counsel and can prove its position through nonprivileged evidence, no implied waiver occurs. CUE, Inc. v. Gen. Motors LLC, No. 13-12647-IT, 2015 U.S. Dist. LEXIS 104638, at * 9 (D. Mass. Aug. 10, 2015); Bacchi v. Mass. Mut. Life Ins. Co., 110 F. Supp. 3d 270, 278 (D. Mass. 2015); Devine v. Golub Corp., No. 3:14-30136-MGM, 2017 U.S. Dist. LEXIS 17815, at * 23 (D. Mass. Feb. 8, 2017). Those decisions reflect the same common-sense principle at work here: simply acknowledging that an investigation occurred, or asserting that one acted in good faith, does not

open the door to privileged communications or work product unless the party affirmatively relies on those protected materials to prove the defense.

Nor does Defendants' good-faith affirmative defense create waiver. A generalized assertion that Defendants acted in good faith or made efforts to comply with applicable law does not, without more, place attorney-client communications at issue. If it did, privilege would disappear in virtually every case where a defendant denied wrongdoing and asserted reasonable or lawful conduct. That is not the law. Waiver requires actual reliance on privileged legal advice, not merely a claim of good faith that may be established through objective, nonprivileged facts. Bacchi, 110 F. Supp. 3d at 278. Plaintiff has identified no instance in which Defendants invoked counsel's advice, legal review, or privileged analysis as the basis for that defense.

The same is true of Plaintiff's reliance on the investigation itself. First Circuit authority distinguishes between mere reference to an investigation and disclosure or use of its privileged substance. To be sure, where a party discloses factual information derived from an internal investigation to the government, a court may find waiver as to the same disclosed factual material. See, e.g., United States v. Billmyer, 57 F.3d 31, 37 (1st Cir. 1995). But that principle does not help Plaintiff here. Defendants have not made any comparable disclosure of privileged communications or attorney analysis, nor have they affirmatively relied on counsel's investigative work as proof of their defenses. Billmyer does not stand for the proposition that every mention of an investigation, or every reference to its outcome, effects a broad subject-matter waiver.

Plaintiff likewise cannot obtain privileged communications and work product by recasting them as ordinary factual materials. The materials sought—investigator notes and an investigative report—are not verbatim witness statements. By their nature, they reflect the investigator's and counsel's mental impressions, selection of facts, lines of inquiry, and strategic focus. Those are

10

classic hallmarks of protected work product. And under the same fairness-based principles governing at-issue waiver, such materials do not become discoverable unless Defendants affirmatively place them in issue by relying on them to prove a claim or defense. See In re Keeper of Records (XYZ Corp.), 348 F.3d at 26.

Just as importantly, Defendants can defend their conduct through nonprivileged evidence: company policies, business records, witness testimony, and evidence of the actions actually taken. Because Defendants need not rely on privileged communications or attorney work product to support their defenses, there is no unfairness in preserving those protections. That is precisely why courts in this Circuit decline to find implied waiver where a party's position can be established without resort to counsel's advice. CUE, Inc., 2015 U.S. Dist. LEXIS 104638, at * 9; Bacchi, 110 F. Supp. 3d at 278; Devine, 2017 U.S. Dist. LEXIS 17815, at * 23.

In short, Plaintiff has not carried her burden. Defendants have not wielded privileged advice as a sword while invoking privilege as a shield. They have not asserted advice of counsel, they have not relied on legal review to establish good faith, and they have not injected privileged investigative analysis into the merits of the case. They merely referenced the existence and general result of an investigation and asserted a generalized good-faith defense. Under First Circuit law, that is insufficient as a matter of law to compel production of attorney-client communications, attorney work product, investigator notes, or investigative materials.

### b. **Plaintiff Has Not Shown Substantial Need Or Undue Hardship**

Plaintiff's assertion of substantial need is also inadequate because the underlying witnesses remain the primary source of the relevant facts, and ordinary discovery tools can obtain the substantial equivalent without invading protected work product. Plaintiff argues she has

11

substantial need because the notes are "the only reliable records" of witness statements from February 2024 and cannot be replicated in later depositions. This is conclusory and insufficient.

First, the witnesses themselves can be deposed. Any lapse of time affects both sides and does not automatically justify invading work product. Plaintiff has not shown that witnesses are unavailable, memory is uniquely lost, or equivalent discovery is impossible.

In addition, Plaintiff alternatively asks the Court to conduct an in camera review of the notes and report. In camera review is not automatic and should not be used as a substitute for Plaintiff's failure to make a sufficient evidentiary showing of waiver or substantial need. If the Court is inclined to review anything, Defendants can propose a more limited approach, such as review of a narrowed set of materials after a privilege-log meet-and-confer.

## B. <u>The Request For Other Complaints About, and Investigations Into, Members of Veson's Senior Leadership Is Overbroad And Disproportionate</u>

Plaintiff's request for complaints made by other employees against other members of Veson's senior leadership should be denied because it is untethered to the claims and defenses in this case and seeks discovery into unrelated personnel matters on nothing more than speculation. Plaintiff alleges that Bridgeo treated her differently because of her sex. But Defendants have already verified that Veson has never received any other complaints about Bridgeo. <u>See</u> <u>Exhibit C</u>. Plaintiff offers no explanation for why complaints involving different employees, different decisionmakers, and different circumstances would make any fact of consequence in her individual case more or less probable. Without any demonstrated nexus to her claims, the request is simply an impermissible fishing expedition.

The request is particularly improper because Plaintiff does not assert a pattern-or-practice claim in her Amended Complaint. Courts routinely deny attempts by individual discrimination plaintiffs to obtain broad discovery aimed at uncovering a supposed pattern or practice where no

such theory has been pleaded and no concrete connection to the plaintiff's own allegations has been shown. See, e.g., Diaz v. Ashcroft, 301 F. Supp. 2d 112, 116 (D.P.R. 2004) (denying motion to compel evidence sought "in an attempt to expose a discriminatory hiring pattern" in an individual discrimination case); DelVecchia v. Frontier Airlines, Inc., No. 2:19-cv-01322-KJD-DJA, 2022 U.S. Dist. LEXIS 139494, at *19 (D. Nev. 2022) (rejecting request for pattern-or-practice evidence where plaintiffs failed to allege a company-wide practice and "made no showing that [such] evidence is connected to their [individual] claims outside of their conclusory assertion"); Lindsey v. Albuquerque Pub. Sch. Bd. of Educ., No. 24-393 GBW/JFR, 2025 U.S. Dist. LEXIS 18221, at *21-23 (D.N.M. Jan. 31, 2025) (denying pattern-or-practice discovery where the request was beyond the scope of the complaint); see also Karp v. Cigna Healthcare, Inc., 882 F. Supp. 2d 199, 202 (D. Mass. 2012) (involving a plaintiff who alleged unlawful gender discrimination in violation of Title VII and c. 151b on behalf of herself and all other employees similarly situated, contending that her employer engaged in systemic gender discrimination in the workplace). The same result is warranted here.

Nor has discovery revealed any basis to justify expanding the case into a broader inquiry about company-wide discrimination. To the contrary, the evidence developed thus far has not identified facts suggesting any pattern or practice of discrimination, and discovery should not be used for "wholly exploratory operations in the vague hope that something helpful will turn up." Mack v. Great Atlantic &amp; Pacific Tea Co., 871 F.2d 179, 187 (1st Cir. 1989). Plaintiff likewise makes no showing that complaints against other senior leaders would bear on whether Defendants discriminated against her. See DelVecchia, 2022 U.S. Dist. LEXIS 139494, at *19; see also Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 472 (1st Cir. 2010) (finding incidents with "no discernible connection" to the employer's actions toward the plaintiff not probative).

Complaints involving different actors and unrelated circumstances are not a substitute for relevance.

Plaintiff's reliance on Briddell v. St. Gobain Abrasives, Inc., 233 F.R.D. 57 (D. Mass. 2005) is misplaced. There, the plaintiff alleged an ongoing course of race discrimination and retaliation, including disparate promotion and training practices affecting African American employees as compared to similarly situated white employees. The discovery dispute concerned whether the employer had to produce a Rule 30(b)(6) witness to testify about its investigations and asserted good-faith efforts to address discrimination, retaliation, and disparate treatment through company policies. Id. at 58-59. In that context, the court concluded that information concerning the employer's general employment practices was relevant. That case bears little resemblance to this one. Plaintiff here does not allege that Veson engaged in a broader policy or practice of discrimination against women, does not seek a narrowly tailored Rule 30(b)(6) deposition on company policies, and instead seeks documents concerning any and all complaints concerning any "wrongdoing" against unspecified members of senior leadership untethered to her individual allegations.

Plaintiff's reliance on Brown v. Wal-Mart fares no better. As Plaintiff describes it, the discovery there was directed to complaints against the plaintiff's supervisor and one other identified employee in a case involving allegations of race-based disparate treatment in work assignments. Here, by contrast, Plaintiff is not limiting her request to complaints concerning Bridgeo—and in any event Defendants have already answered that Bridgeo received none. Instead, she seeks discovery into complaints against other members of senior leadership, even though her Amended Complaint alleges only that Bridgeo treated her differently because of her sex. Brown v. Wal-Mart does not support such a sweeping request.

Because Plaintiff has neither pleaded a pattern-or-practice theory nor shown any meaningful connection between the requested material and her individual claims, the requested discovery falls outside the proper scope of Rule 26 and should be denied.

C. **The Request For Veson's Finances Is Overbroad, Burdensome, And Premature**

Plaintiff's demand for sweeping discovery into Veson's financial information should be denied. Her assertion that she needs this material to assess "damages, including punitive damages," and to value the equity she allegedly would have received absent her claimed constructive discharge is unsupported by the record and disproportionate to the needs of the case. By Plaintiff's own allegations, she remained employed through early July 2024 only after giving notice of her voluntary resignation, and the record shows she began interviewing for her current General Counsel position in May 2024 while still employed at Veson. Am. Compl. ¶ 203. Plaintiff thus seeks intrusive financial discovery even though she resigned voluntarily only after securing alternative employment.

Further, the requests themselves are extraordinarily broad. Plaintiff seeks "all documents" reflecting Veson's budgets and financial statements by month or quarter, revenues and revenue sources from January 1, 2024 to the present, financial projections and projected revenue sources, and financial-status documents to value the Class B Units Award Letter dated October 25, 2022. Requests Nos. 20-22. That is not targeted discovery; it is a wholesale demand for Veson's sensitive financial and business information.

The requests should be denied because they are overly broad, unduly burdensome, and premature. Under Fed. R. Civ. P. 26(b)(2)(C), the Court must limit discovery where it is cumulative, available from less burdensome sources, or where the burden outweighs its likely benefit. As In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig., No. 13-2419-

FDS, 2014 U.S. Dist. LEXIS 205683, at *42 (D. Mass. Feb. 7, 2014) explains, those proportionality limits apply with full force where the requested material is expensive, intrusive, and of marginal relevance. Here, no depositions have yet been taken, liability has not been established, and Plaintiff has not shown why this information cannot be explored first through less burdensome means.

Nor has Plaintiff shown that Veson's finances are presently relevant to her claimed damages. She obtained an equity award from her new employer immediately after leaving Veson, which may equal or exceed any equity she claims she would have received had she remained. At minimum, that issue should be explored through deposition discovery before requiring production of broad categories of confidential financial records.

Further still, Plaintiff's reliance on punitive damages does not justify this request either. Courts in this District have rejected efforts to compel net-worth discovery absent a stronger showing of need. See Pedraza v. Holiday Housewares, Inc., 203 F.R.D. 40, 43 (D. Mass. 2001) (denying motion to compel net-worth discovery and explaining that the purposes of punitive damages do not critically depend on proof that a defendant's wealth exceeds some particular level). Likewise, a defendant's financial condition is not evidence of compensatory damages. See CardiAQ Valve Techs., Inc. v. Neovasc Inc., No. 14-cv-12405-ADB, 2016 U.S. Dist. LEXIS 54835, at *5 (D. Mass. Apr. 25, 2016).

More fundamentally, punitive-damages analysis does not turn on open-ended discovery into a defendant's finances. The Supreme Court has instructed courts to focus on the reprehensibility of the conduct, the ratio between harm and punitive damages, and the comparison to civil penalties in similar cases. Bell v. O'Reilly Auto Enters., LLC, 626 F. Supp. 3d 141, 180 (D. Me. 2022); Aleo v. SLB Toys USA, Inc., 466 Mass. 398, 414 (2013). And the United States

Supreme Court has cautioned that a defendant's wealth "has little to do with the actual harm sustained by the plaintiff" and cannot justify an otherwise excessive punitive award. BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 585 (1996); see also Honda Motor Co. v. Oberg, 512 U.S. 415, 432 (1994).

In short, Plaintiff has not shown that forcing Veson to produce all documents concerning its monthly finances, revenue sources, and projections over a multi-year period is relevant, proportional, or necessary at this stage. The requests are a burdensome attempt to obtain highly confidential financial information before liability discovery has even been completed. The Court should deny the request, or at minimum defer any such discovery unless and until Plaintiff establishes a genuine need for narrower, targeted financial information after depositions and after resolution of liability issues.

### D. The Request for Documents Concerning Ms. Unflat's Departure Are Overbroad And Disproportionate

Finally, Plaintiff's request for "documents concerning the departure of Ms. Unflat" after Plaintiff's resignation is overbroad and disproportionate to the needs of the case. Plaintiff speculates that such documents might cast "doubt" on Ms. Unflat's judgment or reveal Veson's general approach to investigations involving senior leadership, but that is not a sufficient basis for sweeping discovery. Under Fed. R. Civ. P. 26(b)(2)(C), the Court must limit discovery where the requested material is cumulative, obtainable from less burdensome sources, or where the burden and expense outweigh the likely benefit.

That is especially so here, where Plaintiff appears to seek broad pattern-or-practice discovery in an individual discrimination case without pleading such a theory or showing any concrete nexus between Ms. Unflat's later departure and Plaintiff's own claims. Courts in this Circuit routinely reject that kind of fishing expedition. See Diaz v. Ashcroft, 301 F. Supp. 2d 112,

116 (D.P.R. 2004) (denying motion to compel evidence sought "in an attempt to expose a discriminatory hiring pattern" in an individual discrimination case).

And even if the Court were to find some marginal relevance in information concerning Ms. Unflat's departure, which occurred months after Plaintiff's voluntary resignation, Plaintiff's demand for all documents relating to that departure remains plainly disproportionate. Relevance alone does not justify discovery. As one court has explained, "Under the amended Rule 26, relevancy alone is no longer sufficient to obtain discovery; the discovery requested must also be proportional to the needs of the case." EEOC v. Baystate Med. Ctr., Inc., No. 3:16-cv-30086-MGM,  2017 U.S. Dist. LEXIS 179016, at * (D. Mass. Oct. 30, 2017) (internal citation omitted). Plaintiff has also noticed the depositions of several Veson employees and Ms. Unflat. Accordingly, Plaintiff could still obtain the information she seeks through less burdensome sources – i.e. depositions of witnesses, which are already being scheduled. Plaintiff's overbroad requests for documents should therefore be denied.

WHEREFORE, Defendants respectfully request that the Court deny Plaintiff's motion to compel in its entirety.

DEFENDANTS,

VESON NAUTICAL LLC AND SEAN BRIDGEO

By their attorneys,

/s/ Eve R. Keller
Jamie Kessler, BBO # 681867
Eve Keller, BBO # 712209
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, Massachusetts 02116
Telephone: (617) 367-0025
Jamie.kessler@jacksonlewis.com
Eve.keller@jacksonlewis.com

18

## <u>CERTIFICATE OF SERVICE</u>

This hereby certifies that on this 20th day of May, 2026, this document, filed through this Court's ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and a paper and/or electronic copy shall be served on non-registered participants pursuant to applicable rules.

*/s/ Eve R. Keller*
Jackson Lewis, P.C.

4923-1459-7037, v. 1

19