UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LEVINA WONG,<br><br>Plaintiff,<br><br>v.<br><br>VESON NAUTICAL LLC AND SEAN BRIDGEO,<br><br>Defendants. | No. 1:24-cv-12752-IT |

**OMNIBUS ORDER ON DEFENDANTS' MOTION TO COMPEL PLAINTIFF'S PRODUCTION OF DOCUMENTS AND PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

HEDGES, M.J.

Plaintiff Levina Wong brings this action against Defendants Veson Nautical LLC and Sean Bridgeo (collectively, "Defendants"), alleging intentional infliction of emotional distress; violations of Title VII of the Civil Rights Act of 1964; violations of the Americans with Disabilities Act of 1990; violations of the Massachusetts Fair Employment Practices Act; violations of the Massachusetts Earned Sick Time Law; violations of the Massachusetts Paid Family and Medical Leave Act; and tortious interference with advantageous business relations. Specifically, Ms. Wong alleges that she was subjected to an intolerable and unlawful work environment, asserting that Bridgeo orchestrated a campaign of gender-based harassment, that Veson's leadership ratified the conduct, and that this environment culminated in her constructive discharge from her position as Senior Vice President and General Counsel. This action is before the Court on the parties' respective motions to compel discovery. *See* Docket Nos. 29-30 (Defendants' motion to compel Plaintiff's production of documents and supporting

memorandum of law); Docket Nos. 32-33 (Ms. Wong's motion to compel discovery and supporting memorandum of law). For the reasons discussed below, Defendants' motion to compel is GRANTED in part and DENIED in part, and Ms. Wong's motion to compel is GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. Factual Background

Ms. Wong joined Veson in March 2020 as its inaugural Vice President and General Counsel and was promoted to Senior Vice President in April 2023. Docket Nos. 4 ¶¶ 9-10; 12 ¶¶ 9-11. Ms. Wong alleges that, shortly after her promotion, Bridgeo actively and persistently undermined her authority because of her gender by excluding her from material transactions, selecting outside legal counsel without her involvement, and attempting to interfere with Ms. Wong's management of her direct reports during her planned medical leave. Docket No. 4 ¶¶ 31, 33-34, 39-47, 48-54. Ms. Wong alleges that the hostile conduct escalated on February 6, 2024, when Bridgeo carried out a pre-planned "prank" by hiding three fake, yet realistic-looking, toy rats in Ms. Wong's office trash bin, desk, and the bottom of her personal work bag to publicly humiliate and intimidate her in front of other Veson employees. *Id.* ¶¶ 99-116. Ms. Wong contends that after she complained of unlawful harassment and discrimination the following day on February 7, 2024, Veson failed to discipline Bridgeo and instead initiated a series of retaliatory acts against Ms. Wong, including moving C-suite level executives away from proximity to Ms. Wong's legal team and manufacturing performance criticisms by deliberately deleting prior correspondence from an email chain. *Id.* ¶¶ 130, 141, 149-55, 157-63. This cumulative environment allegedly caused Ms. Wong to suffer situational PTSD-like symptoms, requiring FMLA leave from April 8 to April 30, 2024. *Id.* ¶¶ 167-69. Upon her

return, Veson allegedly failed to accommodate Ms. Wong's requests for a mediator and failed to engage in any other interactive process or dialogue to come up with an alternate accommodation. *Id.* ¶¶ 171-81. Additionally, Veson allegedly excluded Ms. Wong from material legal matters within her purview as General Counsel, including transactions surrounding the acquisition of a French software company and the subsequent separation agreement for its former Chief Financial Officer—forcing her constructive discharge on July 3, 2024. *Id.* ¶¶ 11, 164-66, 185-203.

Based on these allegations, Ms. Wong initiated the present action on October 30, 2024. Docket No. 1. She subsequently filed an amended complaint on December 3, 2024. Docket No. 4. Following two assented-to extensions of time, Defendants filed their answer and affirmative defenses on January 29, 2025. Docket Nos. 8, 11, 12. Defendants dispute Ms. Wong's allegations and deny harassing, discriminating, or retaliating against her, or driving her from the organization. Docket Nos. 12 ¶ 24; 30 at 2; 37 at 1-3. They contend that Ms. Wong maintained a collegial and friendly relationship with Bridgeo, frequently joking and teasing him over Slack, and that the toy rats were placed in her office in jest rather than out of malice or gender-based animus. Docket Nos. 12 ¶¶ 18, 103; 30 at 2; 37 at 2-3. Defendants maintain that before the February 6, 2024 prank, Ms. Wong had never reported any employment issues to Veson and acknowledged that Bridgeo believed them to be friends. Docket No. 37 at 2-3. Defendants allege that while Slack messages show Ms. Wong initially joking about the incident on February 6, 2024 her posture shifted the following day. *Id.* at 3. According to Defendants, Ms. Wong informed Chief People Officer Kerry Unflat that after "talking to an attorney" she concluded she had been suffering from bullying and microaggressions and could no longer work at Veson. *Id.*; *see also* Docket No. 12 ¶¶ 130-31.

A few days later, Ms. Wong formally retained legal counsel to represent her during Veson's investigation. Docket Nos. 12 ¶ 136; 37 at 3. In response, Veson's outside counsel retained Renee Jackson, Esq., Founder and CEO of Blue Oak Legal, as an independent third-party investigator to conduct factual findings and enable Veson's outside counsel to provide legal advice to Veson. Docket Nos. 12 ¶ 134; 37 at 3. Defendants assert that Attorney Jackson commenced her investigation on February 12, 2024, interviewing Ms. Wong on February 14, and subsequently interviewing VP of Finance Demetri Beldekas, CPO Unflat, Defendant Bridgeo, and President and COO Sean Riley. Docket No. 37 at 3. Defendants contend that Attorney Jackson concluded there was insufficient evidence of gender discrimination, race discrimination, or retaliation, and delivered her investigative report noting the same to Veson's outside counsel on April 8, 2024. *Id.*

**B. Procedural History**

The Court held an initial scheduling conference on March 11, 2025. Docket No. 17. On March 12, 2025, the Court entered a scheduling order directing initial disclosures to be exchanged by March 25, 2025, and setting a fact discovery completion deadline of October 17, 2025. Docket No. 16. To facilitate the exchange of sensitive information, the Court entered a confidentiality stipulation and protective order on July 25, 2025, allowing the parties to designate materials as "Confidential" or "Highly Confidential: Attorneys' Eyes Only." Docket No. 21 at 2. As the initial discovery deadline approached, the parties filed a joint motion for an extension of time. Docket No. 22. On October 14, 2025, the Court granted the motion, extending the close of fact discovery to February 27, 2026. Docket No. 23. On February 19, 2026, the parties sought a second joint extension of time to complete discovery. Docket No. 25. On February 20, 2026, the Court granted the motion, extending the final deadline for completing depositions and fact

discovery to June 26, 2026. Docket No. 26. In doing so, the Court explicitly cautioned the parties that she "does not anticipate granting further extensions of these deadlines." *Id.*

On June 16, 2026, the parties sought another joint extension of time to complete discovery. Docket No. 42. In response, on June 22, 2026, the Court entered an order modifying the discovery deadlines. Docket No. 44. The June 22 order closed all written discovery, explicitly excepting any further production that the Court may order in response to the pending motions to compel. *Id.* The order also extended the deposition deadline for witnesses unimpacted by the pending motions to July 17, 2026. *Id.* For any deponents requiring recall or deposition following the Court's ruling, the order conditionally extended the completion deadline to either three weeks after the disposition of the pending motions to compel or three weeks after any compelled document production occurs. *Id.* Finally, the order extended the dispositive motion deadline to four weeks after the final deposition is completed and cancelled the June 25, 2026 status conference. *Id.* On that same day, District Judge Talwani referred both ripe motions to the undersigned for disposition. Docket No. 43.

***1. Procedural History as to Defendants' Motion to Compel (Docket No. 29)***

Defendants served Ms. Wong with their first request for production of documents on June 2, 2025. Docket No. 30-1. Request No. 18 sought "[a]ny documents which constitute, relate to, or refer to any communication between [Ms. Wong] and any third parties, excluding her attorneys, but including and not limited to [Ms. Wong's] family members and friends, concerning Bridgeo, or the subject matter of this Action." *Id.* at 6. On July 28, 2025, Ms. Wong served a response objecting to Request No. 18 as "overly broad, unduly burdensome, not reasonably limited in time and scope," "irrelevant," "disproportionate," and "designed to harass," and produced no documents. Docket No. 30-2 at 15; *see also* Docket No. 30 at 3. Defendants issued a deficiency

letter on November 20, 2025, and a follow-up inquiry on January 22, 2026. Docket Nos. 30-3; 30 at 3. Following meet-and-confer sessions and a case management conference, Ms. Wong served an amended response to Request No. 18 on April 2, 2026. Docket Nos. 28; 30 at 3-4; 30-4 at 3. While maintaining her core objections, Ms. Wong agreed to produce text messages exchanged with select individuals who were Veson employees while she and Bridgeo worked there (*i.e.*, from the period September 2022 to July 8, 2024). Docket No. 30-4 at 3. She did not produce any communications with non-Veson third parties, prompting Defendants to file their motion to compel. Docket Nos. 29; 30 at 4. Ms. Wong opposed Defendants' motion to compel on May 11, 2026, Docket No. 34, and Defendants filed a reply in support of their motion on May 21, 2026, Docket No. 38.

***2. Procedural History as to Ms. Wong's Motion to Compel (Docket No. 32)***

The parties also reached an impasse regarding Ms. Wong's discovery requests to Defendants. Ms. Wong served her first set of requests for production and interrogatories on May 9, 2025, Docket Nos. 33-1, 33-2, and her second set on June 16, 2025, Docket Nos. 33-5, 33-6 (collectively, the "Requests" and "Interrogatories"). Defendants served objections and responses to these sets on July 11, 2025, Docket Nos. 33-3, 33-4, and July 25, 2025, Docket Nos. 33-7, 33-8, respectively. Ms. Wong's counsel sent a comprehensive deficiency letter on August 20, 2025, Docket No. 33-9, initiating a series of meet-and-confer sessions spanning from September 2025 through April 2026, Docket No. 33 at 5-6. Defendants also produced their privilege log on October 29, 2025, revealing the existence of the witness interview notes and the April 8, 2024 investigative report compiled by Attorney Jackson ("Jackson Report"). Docket Nos. 33 at 6; 33-10. Defendants served amended written responses to Ms. Wong's first set of requests for production and interrogatories on November 21, 2025, *see* Docket Nos. 33-11, 33-12, however,

the current dispute formalized when Defendants confirmed that they are refusing to provide responses or produce documents across five distinct categories of discovery:

(1) documents responsive to all the Requests from the email accounts and devices of additional Veson custodians Margaret Mo, Boey Yu, Ayla Ahmed, and Christiane Felts;

(2) Attorney Jackson's witness interview notes and investigative report related to Ms. Wong's claims (Request Nos. 8-10, 18, 49-50; Interrogatory No. 20);

(3) information concerning investigations into alleged misconduct or discrimination by any member of Veson's Senior Leadership Team from January 2020 through December 2024 (Request No. 18; Interrogatory No. 15);

(4) Veson's corporate financial information (Request Nos. 20-22); and

(5) documents related to the departure of Veson's former CPO Unflat (Request No. 30).

*See* Docket No. 33 at 6; *see also* Docket No. 32-1. Ms. Wong subsequently filed her motion to compel these five categories of discovery on May 6, 2026, Docket Nos. 32, 33, Defendants opposed Ms. Wong's motion to compel on May 20, 2026, Docket No. 37, and Ms. Wong filed a reply in support of her motion on June 3, 2026, Docket No. 41.

I address each motion in turn below.

## II. LEGAL STANDARDS

Fed. R. Civ. P. 37(a) allows a party to move for an order compelling disclosure or discovery if another party fails to respond to discovery requests or provides evasive or incomplete answers. Fed. R. Civ. P. 37(a)(3)-(4); *see, e.g., DMO Norwood LLC v. Kia America, Inc.*, 691 F. Supp. 3d 252, 257 (D. Mass. 2023); *Fujifilm North America Co. v. M&R Printing Equip., Inc.*, 344 F.R.D. 68, 71 (D.N.H. 2023). When the parties place multiple discovery

disputes before the Court, the Court balances the competing discovery demands against the efficiency of the litigation to ensure a "just, speedy, and inexpensive determination" of the action. Fed. R. Civ. P. 1.

The scope of permissible discovery is governed by Fed. R. Civ. P. 26(b)(1), which provides that:

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The stage of the case also bears upon whether the requested discovery is proportional under Fed. R. Civ. P. 26(b)(1). *See Kraiem v. JonesTrading Institutional Servs. LLC*, No. 1:19-cv-05160, 2024 WL 68388, at *1 (S.D.N.Y. Jan. 6, 2024) ("At this late stage of the discovery process, in a four-year old case, the Court only shall order production of documents it finds important [to] the limited issues at stake in this case." (quotation omitted)); *see also Coleman v. Illinois*, No. 19-cv-03789, 2021 WL 4242465, at *2 (N.D. Ill. April 30, 2021) (considering the late discovery stage as a factor bearing upon proportionality).

Although the Federal Rules of Civil Procedure seek to "ensur[e] wide-ranging discovery of information," *Doelger v. JPMorgan Chase Bank, N.A.*, No. 21-cv-11042-AK, 2022 WL 22837136, at *2 (D. Mass. Oct. 20, 2022) (cleaned up), discovery is not boundless. The Court must limit discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). "District courts exercise broad discretion to manage discovery," *Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003), and "to tailor discovery narrowly," *Cutter v. HealthMarkets, Inc.*, No. 10-cv-11488-JLT, 2011 WL 613703, at *2 (D. Mass. Feb. 10, 2011) (quotation marks omitted).

## III. DISCUSSION

### A. Defendants' Motion to Compel Plaintiff's Production of Documents

Defendants move to compel the production of documents responsive to Request No. 18, which seeks Ms. Wong's communications with non-lawyer third parties, including family and friends, regarding Defendant Bridgeo or the subject matter of this lawsuit. Ms. Wong objects to this request as overbroad, unduly burdensome, irrelevant, disproportionate, and designed to harass. Docket No. 30-2 at 15. Although Ms. Wong subsequently amended her response to offer text messages exchanged with Veson employees, she maintains her refusal to produce any communications with non-Veson third parties. *See generally* Docket No. 34.

As the moving party, Defendants bear the initial burden of showing the relevance of the requested communications, which is broadly construed at the discovery stage. *See Roy v. FedEx Ground Package Sys., Inc.*, 675 F. Supp. 3d 140, 144 (D. Mass. 2023) ("On a motion to compel, the party seeking information in discovery over an adversary's objection has the burden of showing its relevance." (cleaned up)). Defendants have met this burden. In an action alleging a hostile work environment, gender-based harassment, and intentional infliction of emotional distress, contemporaneous private communications by a plaintiff to close confidants regarding her workplace treatment and her emotional state are probative of both the subjective severity of the alleged conduct and the issue of damages. *See Cora v. Amgen Manufacturing Limited*, No. 20-cv-1626, 2026 WL 836834, at *11 (D.P.R. Mar. 26, 2026) (ordering the production of plaintiff's messages that "specifically pertain to allegations in the amended complaint" as

"[c]ommunications records tailored to the cause of action are relevant, proportional, and discoverable." (cleaned up)); *see also EEOC v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 435-37 (S.D. Ind. 2010) (holding that private social media messages are discoverable when they relate to a plaintiff's emotional and mental state placed at issue by claims of severe emotional distress).

Because Defendants demonstrated relevance, the burden shifts to Ms. Wong to show that the requested discovery is improper. *See Roy*, 675 F. Supp. 3d at 144 ("Once a showing of relevance is made, the party opposing disclosure bears the burden of showing that the requested discovery is improper." (cleaned up)). It is well-established that "[i]t is not enough to merely assert overbreadth, burden, or oppression; instead, the party resisting discovery must specifically show how each request for production is either not relevant or overbroad, burdensome, or oppressive." *Katz v. Shell Energy N. Am. (US), LP*, 566 F. Supp. 3d 104, 107 (D. Mass. 2021). Furthermore, "[b]oilerplate generalized objections are inadequate and tantamount to not making any objection at all." *HealthEdge Software, Inc. v. Sharp Health Plan*, No. 19-cv-11020-ADB, 2021 WL 1821358, at *4 (D. Mass. May 6, 2021) (quotation marks omitted). To withhold documents, the resisting party must "articulate precisely why a particular discovery request calls for irrelevant information . . . and/or why responding to it would be unduly burdensome." *Id.* Ms. Wong's generalized objections regarding relevance and proportionality fail to meet this standard. *See* Docket No. 30-4 at 3.

To the extent Ms. Wong resists discovery based on the sensitive nature of communications with friends and family, I recognize that "there is a strong privacy interest in the contents of mobile phones." *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 737 (9th Cir. 2024). However, for discovery purposes, those privacy considerations do not create an absolute bar;

rather, they are balanced within the Fed. R. Civ. P. 26(b) proportionality analysis or addressed via a Fed. R. Civ. P. 26(c) protective order. *See Rivera-Cartagena v. Walmart Puerto* Rico, 269 F.R.D. 169, 172 n.1 (D.P.R. 2010) (holding that the general privacy interests implicated by the disclosure of disciplinary records involving third parties "seem adequately safeguarded by the protective order already in place"). Here, privacy concerns are sufficiently safeguarded by the protective order already entered in this case. *See* Docket No. 21.

Nevertheless, I agree with Ms. Wong that Request No. 18 is overbroad as originally drafted because it lacks temporal parameters and targets "any" communication regarding the "subject matter of this Action," Docket No. 30-4 at 3, without clear boundaries, raising the risk of capturing completely unrelated personal communications. *See Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 571-72 (C.D. Cal. 2012) (denying requests that boundlessly seek messages relating to "any emotion," but approving categories narrowly tailored to communications that explicitly refer to employment or the lawsuit). A targeted approach utilizing agreed-upon search terms and a defined time period ensures the request remains narrowly focused and technically feasible so as to satisfy relevance and proportionality concerns.

Accordingly, Defendants' motion to compel as to Request No. 18 is GRANTED in part, subject to the following limitations: (1) the scope of the production is limited to the period from September 2022 (the start of Bridgeo's employment with Veson) through October 30, 2024 (the date the original complaint was filed); (2) within fourteen days of the date of this Order, the parties shall meet and confer to agree upon a reasonable, limited set of search terms (*e.g.*, names of the Defendants, specific workplace incidents, or core allegations) to run against Ms. Wong's third-party communications (including text messages and personal emails); and (3) following the application of the search terms, Ms. Wong shall review the responsive documents for privilege

and responsiveness, and produce all non-privileged, responsive documents to Defendants within fourteen days of the date the search terms are finalized. Defendants' motion to compel as to Request No. 18 is DENIED beyond these limitations.

**B. Plaintiff's Motion to Compel Discovery**

***1. Documents from Veson employees Margaret Mo and Boey Yu and board members Ayla Ahmed and Christiane Felts***

Ms. Wong seeks to compel the search and production of electronic documents from the email accounts and devices of four additional Veson custodians: Margaret Mo, Boey Yu, Ayla Ahmed, and Christiane Felts. *See* Docket No. 33 at 7-11. As the moving party, Ms. Wong bears the burden of demonstrating the relevance of these accounts. *See Roy*, 675 F. Supp. 3d at 144. I find that she has met this burden as to Mo and Yu. Because Ms. Mo was explicitly identified on the Defendants' initial disclosures, Docket No. 33 at 8, her material relevance to the underlying claims was in part already established by Defendants themselves. *See United States ex rel. Bonzani v. United Techs. Corp.*, No. 3:16-CV-01730, 2020 WL 7339916, at *8-9 (D. Conn. Dec. 14, 2020). Moreover, Ms. Mo is repeatedly identified within Ms. Wong's complaint allegations regarding exclusion from certain legal decisions that ultimately led to her constructive discharge. *See, e.g.*, Docket No. 4 ¶¶ 65-78, 157-63, 195-99. As to Ms. Yu, her relevance is also established by the allegations in the complaint. While Ms. Wong is the only member of her legal team currently designated as a custodian, she repeatedly alleges that Veson's retaliatory acts affected her entire legal team, ultimately causing her constructive discharge. *See, e.g.,* Docket No. 4 ¶¶ 149-55, 182-83, 187. As another representative from that team, Ms. Yu's accounts are highly likely to contain unique, non-duplicative communications necessary to probe these team-wide allegations. Running previously agreed-upon search terms against their files is a targeted and logical inquiry.

Conversely, Ms. Wong has not demonstrated that the production from Ayla Ahmed and Christiane Felts would be non-duplicative or essential enough to outweigh the accompanying burden. At this late stage of litigation, where written discovery has closed and the Court has explicitly cautioned the parties against further delays (Docket No. 26), expanding the electronic discovery scope to include another two individuals raises significant proportionality concerns, especially where their relevance is not apparent from the face of the complaint. Fed. R. Civ. P. 26(b)(1); *see Kraiem*, 2024 WL 68388, at *1. Ms. Wong argues that the Board was informed of the toy rat incident, that these two individuals made the decision to retain a third-party investigator, and that these custodians *may* possess non-privileged records regarding that investigation. Docket No. 33 at 9-10. This argument is not persuasive. Given the subsequent ruling in this Order granting the production of the final third-party investigative report, Ms. Wong has failed to show that adding these two custodians would yield unique, non-duplicative evidence sufficient to justify the burden of expanding discovery at this time.

Thus, Ms. Wong's motion to compel as to additional custodians is GRANTED in part and DENIED in part: (1) the motion is GRANTED as to custodians Margaret Mo and Boey Yu; (2) the motion is DENIED as to custodians Ayla Ahmed and Christiane Felts; and (3) Defendants shall run the existing, agreed-upon ESI search terms against the email accounts and devices of custodians Mo and Yu and produce all responsive, non-privileged documents within thirty days of this Order.

***2. Attorney Jackson's witness interview notes and investigative report***

Ms. Wong also demands the production of the Jackson Report and witness interview notes compiled by the independent third-party investigator pursuant to Request Nos. 8-10, 18, 49, 50 and Interrogatory No. 20. Defendants assert protection of the Jackson Report and the witness interview notes under both the attorney-client privilege and the work-product doctrine.

A party resisting discovery under the protection of a privilege bears the burden of establishing that it applies. *See United States ex rel. Wollman v. Mass. Gen. Hosp., Inc.*, 475 F. Supp. 3d 45, 60 (D. Mass. 2020). However, I need not definitively resolve whether the asserted privileges attached to the Jackson Report in the first instance. Even assuming *arguendo* that the Jackson Report fell within the core protections of the attorney-client privilege or the work-product doctrine when created, I find that Defendants impliedly waived any such protections over the Jackson Report by placing it directly in issue in this litigation.

An implied waiver occurs when a party places protected information "in issue for personal benefit through some affirmative act," such that allowing the privilege to stand would be fundamentally unfair to the opposing party. *Cue, Inc. v. Gen. Motors LLC*, No. 13-cv-12647-IT, 2015 WL 4750844, at *7 (D. Mass. Aug. 10, 2015) (quotation omitted). To trigger such a waiver, a defendant's defense must rely on "certain facts that can only be tested or rebutted if the adversary is given access to the privileged material." *Bacchi ex rel. Situated v. Mass. Mut. Life Ins. Co.*, 110 F. Supp. 3d 270, 276 (D. Mass. 2015) (citing *In re Cnty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008)).

Defendants have done the opposite of parties who successfully avoid an implied waiver by relying purely on objective, non-privileged facts without invoking counsel's input, *see Bacchi v. Massachusetts Mut. Life Ins. Co.*, 110 F. Supp. 3d 270, 276 (D. Mass. 2015), or by explicitly disclaiming reliance on a privileged report to support a good-faith defense, *see Davine v. Golub Corp.*, No. 3:14-cv-30136-MGM, 2017 WL 517749, at *7 (D. Mass. Feb. 8, 2017). Defendants have affirmatively placed the thoroughness and the conclusions of Ms. Jackson's investigation in issue, pointing directly to Ms. Jackson's findings that there was "insufficient evidence" of discrimination or retaliation to justify their lack of subsequent remedial action against Bridgeo

and Veson's former CPO Unflat. *See* Docket No. 33-4 at 7, 9. Specifically, in response to Ms. Wong's Interrogatory No. 15, which requested information regarding "workplace investigation(s) involving allegations of wrongdoing, misconduct, discrimination, harassment, and/or retaliation by any member of Veson's senior leadership team from January 2020 through December 31, 2024," Defendants stated the following:

> On or about February 12, 2024, a third-party investigator commenced an investigation into Plaintiff's allegations of discrimination, harassment, hostile work environment, and retaliation against Mr. Bridgeo. The third-party investigator concluded there was insufficient evidence to show that Mr. Bridgeo's actions were based on Plaintiff's gender or race or that there had been any retaliation.

*Id*. at 9.

Further, in response to Ms. Wong's Interrogatory No. 11, which requested the identification of "every individual involved in discussions concerning what actions, if any, to take towards [Unflat] and other employees in Veson's Human Resources Department as a result of Ms. Wong's reports of their resistant, exclusionary, and retaliatory behavior as alleged in the . . . Complaint," Defendants stated that "no one discussed taking action towards Ms. Unflat because the third-party investigator investigated Plaintiff's allegations of retaliation related to the office relocation and electing not to negotiate an employment agreement for Ms. Wong and found insufficient evidence of retaliation." *Id*. at 7. Defendants thus repeatedly rely on the adequacy and thoroughness of the very investigative process that they now seek to shield from discovery.

Defendants also formally assert as their Tenth Affirmative Defense that they made "good faith efforts to comply with [their] obligations under applicable laws." Docket No. 12 at 27. As the court noted in *Bacchi*, "if the defendant were to raise the defense that it acted based on its own subjective good faith belief that its actions were lawful, then the reliance element would

likely be met, and that is so even if the defendant were to state that it did not intend to introduce any evidence regarding its attorneys' advice." 110 F. Supp. 3d at 276 (discussing *In re Erie Cnty.*, 546 F.3d at 228). That is because the plaintiff, "in order to test the assertion of good faith, would need to know whether the defendant received any legal advice suggesting that its actions were in fact not lawful." *Id*. Because Ms. Wong cannot test or rebut the accuracy and integrity of Veson's good-faith assertions without reviewing the final investigative report itself, application of the attorney-client privilege or the work product doctrine would result in "fairness concerns." *Cue*, 2015 WL 4750844, at *7.

With respect to Attorney Jackson's witness interview notes, however, these materials are separately and independently protected under the work-product doctrine. The work-product doctrine under Fed. R. Civ. P. 26(b)(3) shields tangible items prepared "because of" litigation or reasonable anticipation thereof. *See United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 29-30 (1st Cir. 2009). Ms. Wong assumes for the sake of argument that the work-product doctrine applies, focusing her argument on the claim that the notes constitute discoverable "fact" work product. *See* Docket Nos. 33 at 13-15; 41 at 2-3. Because she offers no argument or evidence to challenge the designation of these notes as work product, that protection stands uncontested.

However, as suggested by Ms. Wong, the work-product doctrine does in fact distinguish between opinion work product—which receives near-absolute protection—and fact work product. *See* Fed. R. Civ. P. 26(b)(3)(A)-(B). The production of fact work product may be compelled where the moving party demonstrates a "substantial need" and "undue hardship." *See United States v. Cadden*, No. 14-cr-10363-RGS, 2015 WL 5737144, at *2 (D. Mass. Sept. 30, 2015). Yet witness interview notes taken by an attorney or investigator routinely span both

categories. *See, e.g., Doe v. Brown Univ.*, No. 23-cv-00376, 2025 WL 1930566, at *2 (D.R.I. July 14, 2025). To be opinion work product, the "focus, selection, or arrangement of the facts" in an attorney's notes must reflect their mental processes, selective filtering, and classic attorney impressions in some way. *See Attorney Gen. v. Facebook, Inc.*, 164 N.E.3d 873, 890-91 (Mass. 2021); *see also In re TelexFree Sec. Litig.*, No. 4:14-md-2566-NMG, 2024 WL 4843750, at *5 (D. Mass. Nov. 20, 2024). Here, Attorney Jackson's witness interview notes likely contain a mixture of protected fact and opinion work product.

To the extent these notes reflect fact work product, Ms. Wong has failed to demonstrate a substantial need or undue hardship. Ms. Wong correctly argues that contemporaneous records also provide unique impressions of the facts immediately following an incident. *See* Docket No. 33 at 14-15; *City of Springfield v. Rexnord Corp.*, 196 F.R.D. 7, 10 (D. Mass. 2000). However, because Ms. Wong will be provided the Jackson Report containing the concrete conclusions that the Defendants explicitly cite in their discovery responses, and because she has had ample opportunity to directly depose the key witnesses regarding their recollections just a few years after the incident at issue, she cannot establish that withholding the raw witness interview notes causes an undue hardship. Attorney Jackson's witness interview notes remain protected work product.[1]

[1] In the alternative, Ms. Wong requests that the Court conduct an *in camera* review to segregate and redact genuine opinion work product from the factual content of the raw witness interview notes, relying on *United States ex rel. Cericola v. Ben Franklin Bank*, No. 99-cv-06311, 2003 WL 22071484, at *3 (N.D. Ill. Sept. 4, 2003). Ms. Wong's reliance on *Cericola* is misplaced. In that case, the court performed an *in camera* review where the underlying investigation reports themselves were entirely withheld under a blanket assertion of privilege. *Id.* at *1. Here, because I have ordered the affirmative disclosure of Attorney Jackson's final investigative report, Ms. Wong will receive the comprehensive factual summaries and conclusions placed at issue by Defendants. *In camera* review of preliminary, unredacted notes is a remedy that is not automatic, and it should not be used as a routine substitute for a moving party's failure to establish a threshold of undue hardship over a specific sub-category of documents. *See United*

Therefore, Ms. Wong's motion to compel as to the investigation file is GRANTED in part and DENIED in part: (1) the motion is GRANTED as to Attorney Jackson's final April 8, 2024 investigative report; (2) the motion is DENIED as to Attorney Jackson's underlying witness interview notes; and (3) Defendants shall produce a copy of the final Jackson Report to Ms. Wong within thirty days of this Order.

3. ***Information concerning investigations into alleged misconduct or discrimination by any member of Veson's senior leadership team from January 2020 through December 2024 (Request No. 18 and Interrogatory No. 15)***

Ms. Wong additionally seeks information regarding internal corporate investigations into alleged misconduct or discrimination by any member of Veson's senior leadership team from January 2020 through December 2024 (Request No. 18; Interrogatory No. 15). Defendants object on overbreadth, relevance, and proportionality grounds. *See* Docket No. 37 at 12-15.

Ms. Wong has successfully demonstrated the baseline relevance of this information. *See Roy*, 675 F. Supp. 3d at 144 (construing relevance broadly at the discovery stage). It is well-established in this district that a plaintiff "should be permitted to show that defendants' past practices manifest a pattern of . . . discrimination." *Briddell v. Saint Gobain Abrasives Inc.*, 233 F.R.D. 57, 59 (D. Mass. 2005) (quoting *Jackson v. Harvard Univ.*, 111 F.R.D. 472, 475 (D. Mass. 1986)). Although Ms. Wong is pursuing an individual claim rather than a systemic class-wide action, a plaintiff pursuing an individual employment discrimination claim may seek discovery of information regarding other complaints made against other employees, provided the request is reasonably restricted in its scope. *See Moreno Rivera v. DHL Glob. Forwarding*, 272

*States v. Zolin*, 491 U.S. 554, 572 (1989) (holding that while a court may conduct an *in camera* review in appropriate circumstances, "the decision whether to engage in *in camera* review rests in the sound discretion of the district court"). Reviewing raw interview notes to extract fragments of fact work product that can be easily obtained via depositions would be an inefficient use of judicial resources.

F.R.D. 50, 54-55 (D.P.R. 2011) (collecting cases); *see also Karp v. CIGNA Healthcare, Inc.*, 882 F. Supp. 2d 199, 212-13 (D. Mass. 2012) (noting it would be "illogical" to bar an individual from proving she was also the victim of a more egregious form of discrimination involving company-wide practices). Courts recognize that employers rarely leave a "smoking gun" of discriminatory intent in these types of cases. *See Brown v. Wal-Mart Assocs., Inc.*, 616 F. Supp. 3d 137, 146 (D. Mass. 2022) (cleaned up). Because direct evidence is rare, discovery regarding complaints brought by other employees is vital to revealing an employer's past practices and similar acts. *See Moreno Rivera*, 272 F.R.D. at 54-55. This information is directly relevant to proving corporate motive, showing disparate treatment, or identifying pretext. *See id.*; *see also Jackson*, 111 F.R.D. at 475-76. Furthermore, because an employer's discriminatory motive may be proved by showing that a plaintiff was treated differently from other similarly situated executives, discovery regarding comparative entities is valid "so long as the breadth and scope are reasonably related the party alleging discrimination." *EEOC v. Baystate Med. Ctr., Inc.*, No. 3:16-cv-30086-MGM, 2017 WL 4883453, at *3 (D. Mass. Oct. 30, 2017) (cleaned up).

Such comparative discovery is thus routinely permitted when restricted to employees within similar work units, departments, or sections, or to those under the same overarching decision-makers. Here, Ms. Wong's request is limited to the "Senior Leadership Team"—the exact operational environment, corporate tier, and decision-making apparatus within which she operated as Senior Vice President and General Counsel. Docket No. 33 at 16.

Since Ms. Wong has established relevance, the burden shifts to Defendants to show why the discovery is improper. *Roy*, 675 F. Supp. 3d at 144. Because internal complaints and personnel records implicate the privacy concerns of non-parties, I must balance the broad parameters of Fed. R. Civ. P. 26(b)(1) against those distinct privacy interests. *See Baystate*,

2017 WL 4883453, at *2. In this instance, Ms. Wong's need for comparative motive evidence outweighs marginal non-party privacy concerns, particularly because any sensitive executive issues are thoroughly shielded from public disclosure by the protective order in this case, Docket No. 21. *See Rivera-Cartagena*, 269 F.R.D. at 172 n.1.

Temporally, I find that the requested five-year window (2020-2024) balances Ms. Wong's need to uncover a continuum of events against the administrative burden on the employer. This duration matches the standard three-to-five-year discovery baseline favored in this circuit, whereas restriction to a window that mirrors Ms. Wong's personal timeline "would foreclose [her] from elucidating past practices." *Jackson*, 111 F.R.D. at 475; *see also Briddell*, 233 F.R.D. at 60. However, to maintain proportionality under Fed. R. Civ. P. 26(b)(1), the substantive scope of the query must be narrowed from Ms. Wong's original request. *See* Docket No. 33-1 at 10 (requesting "*[a]ll* documents concerning *any* complaint and/or investigation into *any* alleged act of wrongdoing, misconduct" (emphasis added)). Proportionality can be achieved by limiting the production to internal complaints or investigations involving upper management regarding allegations of gender discrimination, sexual harassment, or retaliation.

Accordingly, Ms. Wong's motion to compel as to prior executive misconduct investigations is GRANTED in part: (1) the scope of production is limited to internal investigations involving members of Veson's senior leadership team concerning allegations of gender discrimination, sexual harassment, or retaliation from January 2020 through December 2024; and (2) Defendants shall produce all responsive, non-privileged documents within thirty days of this Order. Ms. Wong's motion to compel as to prior executive misconduct investigations is DENIED beyond these limitations.

***4. Veson's corporate financial information (Request Nos. 20-22)***

Ms. Wong requests documents reflecting Veson's monthly or quarterly budgets, financial statements, and financial projections to assess her compensatory equity losses and punitive damages in Request Nos. 20-22. Defendants object to these requests as premature, overly broad, and an intrusive demand for highly sensitive business data. *See* Docket No. 37 at 15-17. Defendants argue that net-worth discovery should be deferred or denied because punitive damages analysis does not depend critically on net-worth metrics, and that Ms. Wong's equity valuation claims should be explored first via less burdensome deposition channels given her subsequent employment mitigating factors. *Id*.

At the outset, Defendants' refusal to produce financial documents until liability is established is procedurally and legally improper. Defendants do not have the right to unilaterally bifurcate these proceedings into distinct liability and damages phases. *See Gonzalez-Marin v. Equitable Life Assur. Soc. of U.S.*, 845 F.2d 1140, 1145 (1st Cir. 1988) (stating that the decision to bifurcate is "peculiarly within the discretion of the trial court"). Furthermore, "a majority of federal courts addressing the issue, generally . . . permit pretrial discovery of financial information without requiring a plaintiff to establish a *prima facie* case on the issue of punitive damages." *Morissette v. Cote Corp.*, No. 2:14-cv-00452-JDL, 2016 WL 6902116, at *2 (D. Me. Nov. 22, 2016).

However, under Fed. R. Civ. P. 26(b)(2)(C), the Court must limit discovery where the burden or intrusion of a request outweighs its likely benefit. Defendants correctly note that a defendant's overall wealth cannot justify an otherwise excessive punitive award, *see BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 585 (1996), and that the purposes of punitive damages do not critically depend on a specified level of wealth, *see Pedraza v. Holiday Housewares, Inc.*, 203 F.R.D. 40, 43 (D. Mass. 2001). A wholesale, sweeping disclosure of all monthly budgets and

projections across the entire company is therefore disproportionate to Ms. Wong's punitive damages claim.

Nevertheless, Ms. Wong has provided a specific, concrete justification for targeted records to calculate her individual operational losses, demonstrating that the financial information is necessary to value the specific Class B Units and equity she would have been entitled to under her October 25, 2022 award letter had she not been constructively discharged. *See* Docket No. 4 ¶ 252; *Viscito v. Nat'l Planning Corp.*, No. 3:18-cv-30132-MGM, 2019 WL 5318228, at *3 (D. Mass. Oct. 21, 2019) (observing that information pertaining to a plaintiff's calculation of alleged equity damages is relevant for discovery purposes). While her ultimate recovery may be impacted by mitigation from her subsequent general counsel position, Ms. Wong is entitled to pretrial discovery of the baseline metrics required to perform her own valuation calculation. To protect Veson's competitive privacy interests, I deny the request for wholesale monthly operational reports; however, I find that the operative protective order (Docket No. 21) sufficiently safeguards the discrete metrics required for Plaintiff's equity valuation.

Thus, Ms. Wong's motion to compel as to Veson's corporate financial information is GRANTED in part: (1) the scope of production is limited to those formal company valuations, annual balance sheets, or performance metrics necessary for Ms. Wong to calculate the value of her Class B Units and equity under the October 25, 2022 award letter during the relevant period of her employment and alleged constructive discharge; and (2) Defendants shall produce this limited financial documentation within thirty days of this Order. Ms. Wong's motion to compel Veson's corporate financial information is DENIED beyond these limitations.

5. ***Documents related to the departure of Veson's former CPO Kerry Unflat (Request No. 30)***

Ms. Wong seeks all documents concerning the departure and separation of Veson's former CPO Unflat in Request No. 30. Ms. Wong argues that because she reported her initial complaints directly to Unflat on February 7, 2024, the sudden departure of the head of human resources during these unfolding events is relevant to proving a retaliatory corporate climate. Docket No. 33 at 19. Ms. Wong further asserts that Unflat's departure allegedly stemmed from a complaint regarding her own misconduct, and that discovery into this matter is highly probative of a discriminatory double standard in how Veson disciplined female executives versus male executives like Defendant Bridgeo. *See id.* at 19-20. Defendants object to the request as an overbroad fishing expedition into a confidential non-party personnel matter that occurred months after Ms. Wong's resignation and lacks a concrete nexus to her individual claims. *See* Docket No. 37 at 17-18.

While discovery regarding similarly situated employees is generally valid in employment discrimination cases, the request must remain proportional and reasonably related to the specific party alleging discrimination. *See Baystate,* 2017 WL 4883453, at *3. Ms. Wong's core argument for relevance is that Veson's handling of an internal investigation against Unflat highlights a disparate treatment double standard between male and female executives. *See* Docket No. 33 at 20. To the extent that any internal complaints, grievances, or investigations exist against CPO Unflat regarding workplace discrimination, harassment, or retaliation during her tenure, those materials are already fully encompassed in, and ordered to be produced under, the affirmative ruling in Section III.B.3 of this Order.

Because the relevant, comparative motive evidence regarding executive investigations is already provided for, forcing a wholesale, sweeping disclosure into the separate administrative mechanics, confidential severance agreements, or personnel files surrounding Unflat's

subsequent departure—which occurred months after Ms. Wong resigned—is overbroad and cumulative under Fed. R. Civ. P. 26(b)(2)(C). Furthermore, because Unflat was previously noticed for a deposition, any remaining personal factual observations she possesses regarding Ms. Wong's time at Veson could have been thoroughly explored through that less burdensome discovery channel. Accordingly, Ms. Wong's motion to compel as to the distinct documents concerning the departure of former CPO Unflat is DENIED.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to compel (Docket No. 29) is GRANTED in part and DENIED in part, and Plaintiff's motion to compel (Docket No. 32) is GRANTED in part and DENIED in part.[2] Accordingly, it is ORDERED:

1. **Third-Party Communications (Defendants' Request No. 18):** Within fourteen days of the date of this Order, the parties shall meet and confer to agree upon a reasonable, limited set of search terms to run against Ms. Wong's third-party communications spanning September 2022 through October 30, 2024. Ms. Wong shall produce all non-privileged, responsive documents to Defendants within fourteen days of the date the search terms are finalized.
2. **Additional ESI Custodians:** Within thirty days of the date of this Order, Defendants shall run the existing, agreed-upon ESI search terms against the email accounts and devices of custodians Margaret Mo and Boey Yu and produce all responsive, non-

[2] The parties are advised that under Fed. R. Civ. P. 72(a) and Rule 2(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party seeking review by a district judge of these determinations and this order must serve and file any objections within fourteen days of being served a copy of this order, unless a different time is prescribed by the magistrate judge or the district judge.

privileged documents. Discovery as to custodians Ayla Ahmed and Christiane Felts is DENIED.

3. **Investigator's File (Plaintiff's Request Nos. 8-10, 18, 49-50; Interrogatory No. 20):** Within thirty days of the date of this Order, Defendants shall produce a copy of Attorney Jackson's final April 8, 2024 investigative report. Discovery as to Attorney Jackson's underlying raw witness interview notes and Ms. Wong's alternative request for an *in camera* review are DENIED.

4. **Prior Executive Misconduct (Plaintiff's Request No. 18 and Interrogatory No. 15):** Within thirty days of the date of this Order, Defendants shall produce all responsive, non-privileged documents regarding internal investigations involving members of Veson's senior leadership team concerning allegations of gender discrimination, sexual harassment, or retaliation from January 2020 through December 2024.

5. **Corporate Financial Information (Plaintiff's Request Nos. 20-22):** Within thirty days of the date of this Order, Defendants shall produce the formal company valuations, annual balance sheets, or performance metrics necessary for Ms. Wong to calculate the value of her Class B Units and equity under the October 25, 2022 award letter.

6. **CPO Departure (Plaintiff's Request No. 30):** Ms. Wong's motion to compel documents related to the distinct administrative circumstances surrounding the departure of former CPO Unflat is DENIED.

SO ORDERED.

Dated: November 13, 2026

/s/ Jessica D. Hedges
United States Magistrate Judge